(745 P.2d 1120)

No. 59,927

DICKINSON, INC., A KANSAS CORPORATION, *Appellant,* v. BALCOR INCOME PROPERTIES LTD.—II, BRI PARTNERS-77, RGF-BALCOR ASSOCIATES, AND CML BALCOR, INC., *Appellees.*

Petition for review denied January 28, 1988.

Opinion filed December 3, 1987.

*J. Stewart McWilliams,* of Linde Thomson Fairchild Langworthy Kohn & Van Dyke, P.C., of Overland Park, and *Richard D. Simpson,* of Morris, Larson, King & Stamper, P.C., of Overland Park, for the appellant.

*Kenneth B. Drost* of Katten, Muchin, Zavis, Pearl, Greenberger & Galler, of Chicago, Illinois, and *Thomas R. Buchanan,* of Shook, Hardy & Bacon, of Overland Park, for the appellees.

Before REES, P.J., DAVIS and SIX, JJ.

SIX, J.: Plaintiff-appellant Dickinson, Inc. (Dickinson) brought this action, alleging that defendants-appellees Balcor Income Properties, Ltd. and its general partners (Balcor) breached a contract requiring Balcor to enter into a thirty-year lease with plaintiff. Dickinson appeals the trial court's granting of: (1) Balcor's motion for summary judgment; and (2) its motion for

attorney fees in the amount of $45,813.85. This court finds no error and affirms the judgment on both issues.

On December 13, 1982, Balcor and Dickinson entered into an "Operating Agreement" under which Dickinson agreed to manage and operate a movie theater located in Hannibal, Missouri. The parties also agreed "on or before February 1, 1983, to enter into a long-term real estate lease."

The Operating Agreement provided that the lease the parties agreed to sign would "at a minimum incorporate the following modifications to the Lease":

"a. Annual rental of $17,730.00 with a 3% rental on box office gross above $400,000.00 a year.

. . . .

"e. The lease term shall be for a period of thirty (30) years with one ten (10) year option, with option period rental to be negotiated or if not agreed to by arbitration."

The Operating Agreement also provided that, if the parties were unable to agree on the other terms of the lease, the matter would be resolved by arbitration. The arbitrators, however, did not have the power to modify or change the amount of rent or the length of the lease term. In addition, the agreement contained a "no oral modification" clause, stating that the agreement could not be modified except by "an instrument in writing, signed by the party against whom enforcement of any such change . . . is sought."

Dickinson alleges that in January or February of 1983, Hoofnagle, a representative of Dickinson, and Bowers, a representative of Balcor, orally agreed to include a "film rental percentage clause" in the thirty-year lease to be signed by the parties. On appeal, Balcor denies that such an agreement occurred, but states that "the trial court properly assumed that [Dickinson's] allegations regarding the oral modification were true" for purposes of considering Balcor's motion for summary judgment.

Dickinson alleged the parties orally agreed that the theater rent would be reduced if Dickinson incurred a higher percentage of film rental than 48%. This oral agreement, if valid, could have reduced the rent on the property by up to $10,000.00 a year. The alleged oral agreement was never reduced to a written agreement.

Dickinson presented Balcor with a thirty-year lease containing the disputed film rental percentage clause. Balcor refused to sign it. Dickinson unilaterally terminated the Operating Agreement on May 25, 1983. After May 25, 1983, Dickinson never proposed to Balcor that the terms of the original Operating Agreement be implemented. Dickinson filed suit against Balcor, alleging Balcor had breached the provision of the Operating Agreement in which the parties had agreed to enter into the thirty-year lease. Balcor answered the petition, denying any breach of contract on its part, and counterclaimed for breach of contract by Dickinson. Balcor prayed for damages and attorney fees under the Operating Agreement. On February 13, 1985, Dickinson filed a first amended petition, increasing the damage claim to $4,401,277.00 and adding an additional cause of action for promissory estoppel. The first amended petition was not included in the record on appeal. The trial court apparently never entered a formal order permitting its filing. It is clear, however, that the trial court considered Dickinson's claim of promissory estoppel. Balcor's answer asserted the affirmative defense of the statute of frauds which Balcor claimed barred Dickinson's action.

Balcor moved for summary judgment. The trial court concluded that the alleged oral agreement to modify the written contract to lease real property was unenforceable under the statute of frauds. The court further concluded that Dickinson's equitable estoppel theory must fail because Dickinson did not rely, to its detriment, on Balcor's promise.

After the trial court granted the motion for summary judgment, Balcor moved for attorney fees under a provision of the Operating Agreement allowing an award of fees to the "prevailing party." The trial court determined that Balcor was entitled to recover attorney fees and entered a judgment against Dickinson in the amount of $45,813.85.

## THE STATUTE OF FRAUDS

The trial court concluded that Dickinson brought this suit not to enforce the Operating Agreement as written, but to enforce the Operating Agreement as modified by the alleged oral agreement relating to the film rental percentage clause. Dickinson, on appeal, does not dispute this conclusion.

An agreement to execute a lease is within the statute of frauds

if the lease the parties have contemplated entering into is within the statute of frauds; therefore, to be valid, the agreement to execute must be in writing. See *Ingram v. Ingram,* 214 Kan. 415, 419-20, 521 P.2d 254 (1974); *Riffel v. Dieter,* 159 Kan. 628, 638, 157 P.2d 831 (1945); *White v. Green,* 103 Kan. 405, 408-09, 173 Pac. 974 (1918); *Robinson v. Smalley,* 102 Kan. 842, 843, 171 Pac. 1155 (1918); *In re Victory Pipe Craftsmen, Inc.,* 8 Bankr. 635, 636 (Bankr. N.D. Ill. 1981) (applying Illinois law); *O'Brien v. Hurley,* 331 Mass. 172, 176, 117 N.E.2d 922 (1954), *cert. denied* 350 U.S. 940 (1956); *Newkirk v. Moley,* 343 S.W.2d 213, 216 (Mo. App. 1960); 2 Corbin on Contracts § 283 (1950).

The first question for resolution by this court is whether the lease the parties agreed to enter into was within the statute of frauds. The applicable statute provides:

"No leases, estates or interests of, in or out of lands, exceeding one year in duration, shall at any time hereafter be assigned or granted, unless it be by deed or note, in writing, signed by the party so assigning or granting the same, or their agents thereunto lawfully authorized by writing, or by act and operation of law." K.S.A. 33-105.

The thirty-year lease which the parties agreed to execute is within the statute. Because the lease is within the statute, the Operating Agreement containing the agreement to execute the lease is within the statute and is required to be in writing.

Because the Operating Agreement had to be in writing under the statute of frauds, "any substantial modification of the contract must likewise be in writing and signed by the party to be charged therewith." *Riffel v. Dieter,* 159 Kan. at 638. The trial court found, and Dickinson has conceded, that the alleged oral agreement pertaining to the film rental percentage clause modified the minimum rental provision contained in the Operating Agreement.

Dickinson alleged in its petition that Balcor breached the Operating Agreement by failing to sign the thirty-year lease as modified by the parties' alleged oral agreement. However, that portion of the Operating Agreement was within the statute of frauds and any substantial modification of that portion of the Operating Agreement was within the statute of frauds. Because the alleged oral contract was never reduced to writing, Dickinson may not bring an action to enforce it. K.S.A. 33-106.

## EQUITABLE ESTOPPEL

Dickinson contends the trial court erred in granting Balcor's summary judgment on Dickinson's equitable estoppel theory.

The record on appeal contains no depositions, affidavits, admissions, or other evidence relating to Dickinson's equitable estoppel theory.

"The burden is upon the appellant to designate a record sufficient to present its points to the appellate court and to establish the claimed error." *Johnson v. Baker*, 11 Kan. App. 2d 274, 277, 719 P.2d 752 (1986) (citing *State ex rel. Ludwick v. Bryant*, 237 Kan. 47, Syl. ¶ 6, 697 P.2d 858 [1985]). The trial court concluded that Dickinson did not take any action in reliance upon Balcor's alleged oral promise relating to the film rental percentage clause. Nothing in the record on appeal suggests otherwise. The trial court did not err in granting Dickinson's motion for summary judgment on Balcor's equitable estoppel theory.

## ATTORNEY FEES

In Kansas, attorney fees are not allowed unless authorized by statute or agreement of the parties. *Schuh v. Educational Reading Services of Kansas*, 6 Kan. App. 2d 100, 101, 626 P.2d 1219 (1981). In the present case, Balcor sought attorney fees based on the following provision of the Operating Agreement:

"If any action be commenced by either of the parties hereto against the other for breach of any of the terms of [*sic*] provisions of this Agreement, the party prevailing in such action shall recover its reasonable attorneys' fees as part of its damages."

Dickinson first contends the trial court was without jurisdiction to award Balcor attorney fees because Balcor dismissed its counterclaim in which it requested attorney fees. Dickinson suggests the dismissal left the trial court without a "viable pleading" conferring jurisdiction on the court. The argument is without merit.

Dickinson, in its petition initiating this action, requested attorney fees. Balcor had originally requested attorney fees in its counterclaim, in accordance with the provision in the Operating Agreement. After summary judgment was granted to Balcor, Balcor moved to dismiss its counterclaim, expressly stating that it still desired "to pursue [its] remedy of attorney fees against the plaintiff." Balcor also filed a motion for attorney fees.

There were two pleadings before the court: Balcor's motion to dismiss the counterclaim, which expressly reserved the right to pursue the remedy of attorney fees, and the motion for attorney fees. While it is true a trial court has no jurisdiction to hear issues not raised by the pleadings or defined at the pretrial conference, a trial court may consider new issues raised by the evidence to which there is no objection. *Febert v. Upland Mutual Ins. Co.,* 222 Kan. 197, 200, 563 P.2d 467 (1977). Here, there was a pleading requesting attorney fees before the court. In addition, there is no evidence that Dickinson objected to the trial court's consideration of this issue.

Dickinson contends the contractual provision allowing the "prevailing party" to collect attorney fees requires that the prevailing party recover damages before fees may be awarded. Because Balcor did not recover any damages, Dickinson contends Balcor could not recover attorney fees.

The trial court concluded that the parties' intent was clear from the language of the attorney fee provision. The parties intended that, in any action arising out of an alleged breach of the Operating Agreement, the prevailing party would recover its attorney fees. Balcor was not required to recover damages independent of the fees in order to be awarded fees.

"Regardless of the construction of a written instrument made by the trial court, on appeal the instrument may be construed and its legal effect determined by the appellate court." *Cornwell v. Jespersen,* 238 Kan. 110, 116, 708 P.2d 515 (1985) (citing *Hall v. Mullen,* 234 Kan. 1031, 678 P.2d 169 [1984]). This is because the construction of a written instrument is a question of law, over which appellate courts have unlimited review. *Home State Bank v. Johnson,* 240 Kan. 417, Syl. ¶ 3, 729 P.2d 1225 (1987).

The cardinal rule in the interpretation of contracts is to ascertain the intent of the parties and to give effect to that intent. *Johnson v. Johnson,* 7 Kan. App. 2d 538, 542, 645 P.2d 911, *rev. denied* 231 Kan. 800 (1982). The attorney fee provision in the Operating Agreement contemplates an award of attorney fees "in any action . . . commenced by either of the parties [to the] party prevailing in such action." Contrary to Dickinson's argument, the prevailing party need not recover damages indepen-

dent of the fees, but, according to the contract, the fees are a part of the damages. The attorney fees provision indicates that Balcor and Dickinson intended that in any action arising out of a breach of the Operating Agreement, the prevailing party would recover its attorney fees.

Dickinson contends the trial court erred in not granting a jury trial on the issue of attorney fees. The argument is without merit.

It is true, as Dickinson argues, that when a jury trial has been demanded, the trial of all issues so demanded shall be by jury, unless the parties stipulate otherwise. K.S.A. 60-239(a)(1). However, "[c]onduct or acquiescence inconsistent with an intention to insist on a jury trial may constitute waiver thereof." *Westamerica Securities, Inc. v. Cornelius*, 214 Kan. 301, 306, 520 P.2d 1262 (1974) (citing *Elwood-Gladden Drainage District v. Ramsel*, 206 Kan. 75, 476 P.2d 696 [1970]).

Dickinson did not request a jury trial on the attorney fees issue either prior to or at the hearing. Dickinson (1) allowed the issue to proceed through the evidentiary hearing without objection; (2) appeared at the hearing without objection; and (3) cross-examined Balcor's witnesses concerning the reasonableness and amount of fees. Dickinson did not make any demand for a jury trial until its motion for new trial. See *Elwood-Gladden Drainage District*, 206 Kan. at 78. Dickinson may not complain of matters to which it has consented, or take advantage of error which it has invited or in which it has participated. *Elwood-Gladden Drainage District*, 206 Kan. at 78. The trial court did not err in denying Dickinson's request for a new trial by jury on the issue of attorney fees.

Dickinson contends the amount of attorney fees awarded, $45,813.85, was "clearly erroneous."

The amount of attorney fees to be awarded is a matter largely within the trial court's discretion and will be overturned only upon a showing of an abuse of discretion. *Hochman v. American Family Ins. Co.*, 9 Kan. App. 2d 151, 155, 673 P.2d 1200 (1984). The factors a trial court should consider in determining the amount of a reasonable attorney fee are:

" 'the amount and character of the services rendered; the labor, time and trouble involved; the nature and importance of the litigation or business in which the services were rendered; the responsibility imposed; the amount of money or the

value of the property affected by the controversy, or involved in the employment; the skill and experience called for in the performance of the services; the professional character and standing of the attorney and the results secured.' " *Hall v. Hamilton*, 233 Kan. 880, 886, 667 P.2d 350 (1983) (quoting *City of Wichita v. Chapman*, 214 Kan. 575, Syl. ¶ 7, 521 P.2d 589 [1974]).

The application of these standards to the facts of this case reveals the trial court did not abuse its discretion in its award of attorney fees. Dickinson's petition requested damages in the amount of $200,000, and that request was increased as discovery progressed. Substantial discovery was performed prior to Balcor's motion for summary judgment. Three attorneys testified that the fees requested were reasonable. The trial court did not abuse its discretion in awarding Balcor attorney fees in the amount of $45,813.85.

Affirmed.