## KANSAS TURNPIKE AUTHORITY, Plaintiff,

### v.

## MORGAN GUARANTY TRUST COMPANY OF NEW YORK, Defendant.

### Civ. A. No. 88–4293–S.

United States District Court, D. Kansas.

Nov. 30, 1990.

Dan Biles, Lawrence C. Gates, Gates & Clyde, Chartered, Overland Park, Kan., for plaintiff.

Christopher Crowley, John R. D'Angel, Davis, Polk & Wardwell, New York City

and Myron L. Listrom, Deanne Watts Hay, Sloan, Listrom, Eisenbarth, Sloan & Glassman, Topeka, Kan., for defendant.

## MEMORANDUM AND ORDER

SAFFELS, District Judge.

This matter was tried to the court on August 23 and 24, 1990. This is a declaratory judgment action, initiated by the Kansas Turnpike Authority ("KTA") seeking a declaration with respect to the right of Morgan Guaranty Trust Company of New York ("Morgan") to obtain indemnification for attorneys' fees which it incurred in defending a lawsuit brought against Morgan, KTA, and Bank IV Wichita ("Bank IV"). On June 13, 1990, this court issued an order ruling that Morgan has a right to indemnification from KTA pursuant to a contractual agreement between the KTA and Morgan. Specifically, the court held that defendants are entitled to indemnification for legal fees pursuant to Section 7 of the Escrow Deposit Agreement which accomplished the defeasance of bonds in 1984. The remaining issue tried before the court is what amount of attorneys' fees sought by the defendant are recoverable. After reviewing the evidence presented at trial, the court, pursuant to Rule 52(a) of the Federal Rules of Civil Procedure, issues the following findings of fact and conclusions of law relevant to KTA's claim for declaratory relief.

*Findings of Fact*

1. The first of the two underlying lawsuits was filed in 1986 by two holders of 1954 KTA bonds, Barr Brothers & Co., Inc. ("Barr Brothers") and Henry P. Wheeler against Morgan, KTA, and Bank IV, Morgan's co-trustee, in the Circuit Court of Cook County, Illinois (the "Illinois action"). Barr Brothers, a New York securities firm, was the primary litigant in that action. At issue in the Illinois action was the legality of the KTA's defeasance of the 1954 bonds accomplished in 1984.

2. After the Illinois action was filed, Morgan retained Davis Polk and Wardwell, a New York law firm, as its outside counsel. Upon advice of Davis Polk and Ward-well, Morgan retained Jenner and Block, a Chicago law firm, as local counsel in Illinois.

3. Morgan, KTA and Bank IV agreed to share Jenner & Block as local counsel for all three parties in the Illinois action. They further agreed to divide the costs of hiring Jenner & Block; each party to pay one third of the cost.

4. Upon entering into this agreement on, Morgan requested indemnification from KTA for all of its legal fees, including those paid to Jenner & Block. On February 10, 1987, KTA refused this request on grounds that Morgan may have acted illegally and improperly as a trustee.

5. Subsequent to the filing of the Illinois action, KTA, Morgan and Bank IV initiated a declaratory judgment action ("Kansas action") in Shawnee County District Court in the State of Kansas raising the same issue in question in the Illinois action, *i.e.*, whether the 1984 defeasance was proper. At the same time, these parties moved to dismiss the Illinois action on *forum non conveniens* grounds.

6. On September 18, 1986, the Illinois court granted defendant's motion to dismiss for *forum non conveniens.* This decision was upheld by the Illinois Court of Appeals. *Wheeler v. Kansas Turnpike Auth.*, 157 Ill.App.3d 56, 109 Ill.Dec. 441, 510 N.E.2d 62 (1987).

7. Morgan retained the services of a Topeka, Kansas firm, Sloan, Listrom, Eisenbarth, Sloan and Glassman as their local counsel to assist in the Kansas action.

8. Morgan, KTA, and Bank IV then moved for summary judgment on the merits in the Kansas action. Their motion was granted on August 4, 1987, by Shawnee County District Judge Terry Bullock. This decision was then appealed by Barr Brothers. On August 24, 1988, the decision of the lower court was affirmed. *Kansas Turnpike Auth. v. Wheeler*, 243 Kan. 602, 760 P.2d 1213 (1988).

9. In both the Illinois and the Kansas actions, counsel for KTA, namely Gates and Clyde, Chartered, spent a total of 2,319 hours of lawyer time. Morgan's counsel,

Davis Polk and Wardwell and Sloan, Listrom, Eisenbarth, Sloan and Glassman spent 1,654.8 hours (1,291 hours for attorneys and 363.8 hours for other professionals involved in the litigation) in the Illinois action and 991.5 hours (817.5 hours for attorneys and 174 hours for professionals) in the Kansas action for a total of 2,646.3 hours.

10. The defeasance of the 1954 bonds was controversial and the announcement resulted in several dissatisfied bondholders sending in letters which challenged the defeasance and one which threatened to litigate the validity of the planned defeasance.

11. The 1954 bonds lost a third of their market value after announcement of the planned defeasance.

12. The type of defeasance accomplished by the 1984 defeasance was not specifically authorized by the defeasance section of the 1954 indenture agreement, Section 1201.

13. The underwriters of the 1984 defeasance inquired as to the legality of the type of defeasance planned. The degree of concern expressed by the underwriters was unusual. Further, according to Thomas Godfrey, corporate trust attorney at Davis Polk and Wardwell, it was the first time he had ever been approached by an underwriter regarding the validity of the defeasance of bonds. This defeasance was the most controversial defeasance since Godfrey joined Davis Polk and Wardwell in 1973.

14. Michael Sparrow, Vice President of Morgan, testified that this was the most controversial defeasance he had been involved with at Morgan over the past 40 years.

15. Morgan is entitled to reimbursement for legal fees pursuant to the Escrow Deposit Agreement which gives Morgan an unqualified right to indemnification. This agreement contains no language restricting Morgan's right to select counsel, nor does it restrict the amount of attorneys' fees for which KTA must indemnify Morgan. Further, the indemnification clause contains no language requiring that attorneys fees be "reasonable."

16. Davis Polk and Wardwell had represented Morgan in all transactions with the KTA since the issuance of the 1954 bonds.

17. In complex litigation, the use of regular and out-of-state counsel, as local counsel, is appropriate.

18. The actual staffing (primarily one senior partner and two associates) employed by Davis Polk and Wardwell was light in terms of the amount usually employed in complex litigation.

19. The hourly rates charged by Davis Polk and Wardwell (ranging from $373.75 for senior partners to $234.39 for senior attorneys down to $120.75 for associates) were the regular hourly rates charged to all clients of Davis Polk and Wardwell. These rates are in line with those charged by similar New York-based firms.

20. Expert witnesses Allan Gropper of the law firm of White & Case, and Michael Grady from the law firm of Cosgrove, Webb and Oman, testified that the litigation in the underlying case involved complex, high stakes litigation. This testimony parallels statements made by Norman Gaar of the law firm of Gaar and Bell, bond counsel in the 1984 defeasance, in which he characterized the bond defeasance litigation as "one of the most complicated financing issues in Kansas in years. No doubt about it." (Ex. 474) and Gerald Kintzel, Senior Vice President of Stern Brothers and Company, lead underwriter in the transaction, who stated the defeasance was "one of the most complicated issues I have ever worked on." (Ex. 475).

21. Damages sought by plaintiffs in the underlying Illinois action included $36,000,000 in compensatory damages and $160,000,000 in punitive damages.

22. Barr Brothers' claim for punitive damages was directed at Morgan and Bank IV, as co-trustees. KTA was not a defendant to the punitive damage claim based against the co-trustees, which was based upon breach of fiduciary duty and conflict of interest allegations by plaintiffs.

23. The decision of *Application of Oklahoma Turnpike Auth.*, 416 P.2d 860 (Okla.1966), in which the Oklahoma Su-

preme Court upheld the defeasance of similar bonds under Oklahoma law, although relevant and persuasive, did not eliminate the need for Morgan to actively defend itself in the underlying action.

24. Further, three distinct issues were raised by bondholders in the two underlying cases which were not at issue in *Application of Oklahoma Turnpike Authority*. These were: 1) the effect of the sinking fund provision and whether it amounted to a fixed payment provision; 2) the proper interpretation of Section 301 of the 1954 indenture agreement and whether it required redemption on one date rather than permitting a serial payment over time; and 3) the proper interpretation of Section 307 of the 1954 indenture agreement and whether it required payment of the defeasance funds at the earliest redemption date.

25. In complex litigation, it is a common practice for Davis Polk and Wardwell and other major New York law firms to work in collaboration with local counsel where the litigation is taking place.

26. Davis Polk and Wardwell worked in collaboration with Sloan, Listrom, Eisenbarth, Sloan & Glassman.

27. Prior to commencement of this action in 1988, KTA did not object to Morgan's having retained the services of both Davis Polk and Wardwell and Sloan, Listrom, Eisenbarth, Sloan and Glassman.

28. It is customary for firms to charge their normal hourly rate when they represent a corporation in matters outside of their home state.

29. Davis Polk and Wardwell's practice of charging secretarial word processing charges in addition to the hourly rate for legal work is a practice consistent with that of other New York firms.

30. KTA has refused to indemnify Morgan for attorney fees subsequent to the commencement of the Illinois action. Initially, KTA refused to indemnify Morgan on the grounds that it would not owe any indemnification if Morgan were found to have acted improperly in the defeasance of the 1954 bonds.

31. Morgan seeks indemnification from KTA as follows:

| | | |
|---|---|---|
| 1. | Jenner & Block | $ 64,585.11 |
| 2. | Sloan, Listrom, Eisenbarth, Sloan & Glassman | 89,365.30 |
| 3. | Davis Polk & Wardwell | 374,961.92 |
| 4. | Morgan's own services (time spent reviewing & duplicating documents in connection with discovery) | 10,520.00 |
| 5. | Interest 1% above Morgan's prime rate up to October, 1990 | 20,364.19 |
| | TOTAL | $559,796.52 |

32. KTA stipulated at trial that fees and expenses paid by Morgan to Jenner and Block were reasonable. Further, KTA's own expert witnesses testified that the fees and expenses paid to Sloan, Listrom, Eisenbarth, Sloan and Glassman were reasonable. Therefore, KTA is only contesting the attorneys' fees billed to Morgan by Davis Polk and Wardwell.

33. KTA's expert testimony focused on what would be a reasonable amount of attorneys' fees charged by Davis Polk and Wardwell, rather than demonstrating how the fees sought were unreasonable.

34. The records submitted by Davis Polk and Wardwell and Sloan, Listrom, Eisenbarth, Sloan and Glassman reflect the hours spent by attorneys and paralegals at those two firms in connection with the Illinois and Kansas actions except for four hours which were mistakenly billed to the Illinois action.

*Conclusions of Law*

1. This court has jurisdiction pursuant to 28 U.S.C. Sections 1441(a) and 1332.

2. This court has previously ruled that defendants are entitled to indemnification from KTA for expenses incurred in defending and prosecuting the Illinois and Kansas actions pursuant to Section 7 of the Escrow Deposit Agreement. Memorandum and Order, filed June 13, 1990.

3. In determining whether defendants are entitled to the full amount of indemnification sought, it is the law of the Tenth Circuit, that "where the court is merely enforcing a contractual provision authorizing attorneys' fees, the fees are routinely awarded and the contract is enforced according to its terms." *United States v. Western States Mechanical Contractors,*

834 F.2d 1533, 1548 (10th Cir.1987) (hereafter referred to as *"Western States"*) (citing *Fortier v. Dona Anna Plaza Partners*, 747 F.2d 1324, 1337–38 (10th Cir.1984) (applying New Mexico law); *Engel v. Teleprompter Corp.*, 732 F.2d 1238, 1241 (5th Cir.1984); *Austin v. Parker*, 672 F.2d 508, 518–20 (5th Cir.1982); 6 *Moore's Federal Practice* ¶ 54.78[2] (1987)).

4. When interpreting the substantive provisions of the contract at issue here, Kansas law controls because this court has diversity jurisdiction and the contract is a Kansas contract. *See e.g., Fortier*, 747 F.2d at 1337–38 (court applied New Mexico contract law when construing the language of an attorneys' fee clause contained in a New Mexico contract).

■ 5. In Kansas, contracting parties "may make contracts on their own terms, provided they are neither illegal nor contrary to public policy, and that in the absence of fraud, mistake, or duress a party who has fairly and voluntarily entered into such a contract is bound." *Adams v. John Deere Co.*, 13 Kan.App.2d 489, 774 P.2d 355 (1989) (citing *Wille v. Southwestern Bell Tel. Co.*, 219 Kan. 755, 549 P.2d 903 (1976)).

■ 6. Contractual indemnification provisions for attorneys' fees are not illegal, nor are they against public policy in the state of Kansas. *See Dickinson, Inc. v. Balcor Income Properties Ltd. II*, 12 Kan. App.2d 395, 745 P.2d 1120, 1123 (1987) ("attorney fees are not allowed unless authorized by statute or *agreement of the parties*" (emphasis added)).

■ 7. The indemnification clause under which Morgan seeks recovery contains no express limitations on what amount of attorneys' fees are to be indemnified.

8. Under the express provisions of the contract, defendant Morgan is entitled to recover all of its expenses incurred in the Kansas and Illinois actions which "ar[ose] out of the execution and delivery of the Agreement [Escrow Deposit Agreement]."

9. The contractual clause which provides for indemnification has not been challenged by KTA to be unconscionable, nor does the court find the contractual provision to be unconscionable. Thus, it is enforceable according to its terms. *See Wille*, 549 P.2d at 907.

10. Moreover, KTA has failed to demonstrate a basis upon which this court may deny enforcement of the contract of indemnification.

11. Furthermore, the question of whether the fees billed by Davis Polk and Wardwell were reasonable is actually irrelevant to the court's decision. The basis for applying the test of reasonableness in *Western States* was the Tenth Circuit Court of Appeal's recognition of the "implied covenant of good faith and fair dealing" in contractual transactions. *Western States*, 834 F.2d at 1548. However, in this case, the court must look to Kansas law to determine whether an implied covenant of good faith and fair dealing, as stated in the Restatement (Second) of Torts § 205 applies to this contract. The court finds that the Kansas Supreme court has not expressly adopted the doctrine of an "implied covenant of good faith and fair dealing" as a basic principle of contract law, although it has recognized its applicability in cases to which the Kansas version of the Uniform Commercial Code, K.S.A. 84–1–101 *et seq.*, applies. *Morriss v. Coleman Co., Inc.*, 241 Kan. 501, 738 P.2d 841, 849 (1987). Thus, because the contractual provision does not contain a limitation of "reasonableness" and because no legal basis for implying the term "reasonable" exists, the court must enforce the indemnification provision as expressly written:

> [KTA agrees to indemnify Morgan] from and against any and all liabilities, obligations, losses, damages, penalties, claims, actions, suits, costs, expenses and disbursements (*including legal fees and disbursements*) of *whatsoever kind and nature* which may be imposed on, incurred by, or asserted against, at any time [Morgan]. . . . (emphasis added).

Escrow Deposit Agreement, Section 7. Therefore, all of the actual legal fees and other costs incurred by Morgan which arose out of the Kansas and Illinois actions are recoverable pursuant to the parties' contract of indemnification.

12. Moreover, even assuming that the doctrine of an implied covenant of good faith and fair dealing were applicable to the instant contract, KTA has failed to demonstrate that the attorneys' fees billed by Davis Polk and Wardwell were unreasonable.

13. The burden of proving KTA's claim that Morgan's claim for indemnification is based upon unreasonable attorneys' fees is on KTA, as plaintiff in this declaratory judgment action. *See Steiner Sales Co. v. Schwartz Sales Co.*, 98 F.2d 999 (10th Cir. 1938), *cert. denied*, 305 U.S. 662, 59 S.Ct. 364, 83 L.Ed. 430 (1939); 10A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2770, at 761–63.

14. Under Kansas law, factors which may be considered to determine whether attorneys' fees are reasonable include:

the amount and character of the services rendered; the labor, time and trouble involved; the nature and importance of the litigation or business in which the services were rendered; the responsibilities imposed; the amount of money or the value of the property affected by the controversy, or involved in the employment; the skill and experience called for in the performance of the services; the professional character and standing of the attorney and the results secured.

*Dickinson, Inc. v. Balcor*, 745 P.2d at 1125 (quoting *City of Wichita v. Chapman*, 214 Kan. 575, Syl. ¶ 7, 521 P.2d 589 (1974)). The factors listed under Rule 1.5(a) of disciplinary rules recently adopted by the Kansas Supreme Court and effective as of March 1, 1988, are substantially the same as those listed by the court in *Dickinson*. *See* MRPC 1.5(a)(1)–(8).

15. KTA's primary contention at trial was that the law firm of Davis Polk and Wardwell of New York billed an excessive amount of time to Morgan for its work in the Illinois and Kansas actions. The court finds that KTA has failed to demonstrate how Morgan's hours were excessive, thus making them unreasonable. Although the hours may appear excessive under Kansas standards, Davis Polk and Wardwell, a New York law firm, was representing a large New York client, Morgan Guaranty and Trust; therefore, Kansas standards are simply not applicable. Further, KTA has failed to present the court with conclusive evidence that the hours billed by Davis Polk and Wardwell were excessive. The comparison of hours spent in products liability litigation is simply not probative of what constitutes an excessive number of hours in the type of litigation involved in the underlying cases. Moreover, the number of hours billed by Davis Polk and Wardwell are similar to the amount of hours billed by KTA's own counsel. In fact, the total number of hours billed by Davis Polk and Wardwell are 200 hours less than those billed by KTA's own counsel. Because the claims directed at KTA, as issuer of the 1954 bonds, were substantially different than those directed at Morgan, as trustee, the court finds that Morgan's retention of Davis Polk and Wardwell was justified. The court further finds that the number of hours billed by Davis Polk and Wardwell were reasonable in view of Davis Polk and Wardwell's active involvement in the two underlying actions.

16. The court finds that the so-called "iron clad" defense of reliance upon the advice of counsel allegedly available to Morgan, as trustee, did not obviate the need for Morgan, as defendant to a $160,-000,000 claim for punitive damages, to vigorously defend itself against the underlying bondholders' claims.

17. Further, KTA's expert witnesses all testified what would be a reasonable fee for the work done by Davis Polk and Wardwell, rather than how the billings of Davis Polk and Wardwell were unreasonable. This court does not have authority to compute a reasonable fee; rather this court has authority only to determine whether the fees claimed are unreasonable or inequitable. *Western States*, 834 F.2d at 1550.

18. In applying the factors which are determinative for what constitutes "reasonable" attorneys' fees under Kansas law, the court finds that the reputation of Davis Polk and Wardwell, the stakes involved, the complexity of the case, the skill of Davis Polk and Wardwell, and the success-

ful results achieved in the underlying cases lead the court to conclude that the fees billed to Morgan by Davis Polk and Wardwell are not unreasonable. Therefore, KTA has failed to carry its burden of proof in this action for declaratory relief. Thus, the court will order KTA to reimburse Morgan for its attorneys' fees and other costs incurred pursuant to the Kansas and Illinois actions in the amount of $539,432.33.

19. In addition to reimbursement, defendant Morgan seeks prejudgment interest and also moves the court to retain jurisdiction on the issue of attorneys' fees incurred in defending this action. The court will not award prejudgment interest in this case. Under Kansas law, "it is the 'general rule that an "unliquidated" claim for damages does not draw interest until liquidated—usually by judgment.'" *Holmes v. Kewanee Oil Co.*, 233 Kan. 544, 664 P.2d 1335 (1983), *cert. denied*, 474 U.S. 953, 106 S.Ct. 322, 88 L.Ed.2d 305 (1985) (citing *Lightcap v. Mobil Oil Corp.*, 221 Kan. 448, 466, 562 P.2d 1 (1977)).

20. Because the amount due under the contractual indemnification provision is the focus of this dispute, the court finds that the damages in this action are unliquidated. Thus, the court will deny defendant's claim for prejudgment interest in the amount of $20,364.19.

21. Because this is a diversity case, the question of awarding attorneys' fees to the prevailing party in this action is a matter of Kansas law. *Alyeska Pipe Line Serv. Co. v. Wilderness Soc'y.*, 421 U.S. 240, 259, 95 S.Ct. 1612, 1622, 44 L.Ed.2d 141 (1975) (citing 6 J. Moore, *Moore's Federal Practice* ¶ 54.78[1]). Under Kansas law, the award of attorneys' fees is "not allowed unless authorized by statute or agreement of the parties." *Schuh v. Educational Reading Serv. of Kansas*, 6 Kan.App.2d 100, 101, 626 P.2d 1219 (1981).

22. Defendant requests that the court award attorneys' fees pursuant to 28 U.S.C. § 2202 which provides:

[f]urther necessary or proper relief based on a declaratory judgment or decree *may be* granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment.

Accordingly, under this provision, whether to award attorneys' fees lies in this court's discretion. The court notes that the usual rule under "both federal and state practice ... is that attorney's fees are not taxable as costs against the losing party." 6 J. Moore, *Moore's Federal Practice* ¶ 54.78[1], at 54–589. The court hereby declines to award attorneys' fees to Morgan, the prevailing party in this action.

IT IS BY THE COURT THEREFORE ORDERED that plaintiff's claim for declaratory judgment is denied.