118,845

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

EVELYN HARDER,
*Appellant,*

v.

ESTATE OF RONALD H. FOSTER, et al.,
*Appellees.*

SYLLABUS BY THE COURT

1.

Section 5 of the Kansas Constitution Bill of Rights preserves the common law right to a jury trial as it existed at the time of its adoption.

2.

At common law, there was no right to recover attorney fees and expenses in a civil action. As a result, Section 5 of the Kansas Constitution Bill of Rights does not guarantee the right to a jury trial to determine whether attorney fees and expenses should be awarded or to determine a reasonable amount of attorney fees to be awarded.

3.

Kansas follows the American rule under which each party is responsible for paying its own attorney fees and expenses unless a statute or contract specifically authorizes assessment of those fees to the other party.

1

4.

In the exercise of their equitable powers, courts have recognized a limited number of exceptions to the American rule. Kansas recognizes the third-party litigation exception to the American rule to protect those who are drawn into litigation due to the wrongful conduct of third parties.

5.

The factors required to be shown to recover attorney fees and expenses under the third-party litigation exception to the American rule were set forth in *Harder v. Foster*, 54 Kan. App. 2d 444, 401 P.3d 1032 (2017).

6.

Because the third-party litigation exception to the American rule is an equitable remedy and is not a common law remedy recognized at the time Section 5 of the Kansas Constitution Bill of Rights was adopted, there is no right to a jury trial to determine whether the exception applies in a particular case.

7.

Even when a jury has been requested in a civil action, a party may waive the request based on conduct that is inconsistent with an intention to insist on a jury trial.

8.

If a party invites or encourages a district court to commit error or proceed in a particular way, that party is generally precluded from challenging such ruling on appeal.

9.

To promote judicial efficiency, the law of the case doctrine provides that an appellate court's decision on a legal issue is binding on both the district court and the parties on remand.

10.

A party is not entitled to a jury trial as a matter of right in a suit in equity. In determining whether an action is one in equity, the test is whether the essential nature of the claim is grounded on equitable principles and is one in which equitable relief is sought.

11.

Because the third-party litigation exception to the American rule is grounded in the equitable powers of the court, a party seeking to recover attorney fees and expenses under the exception does not have a right to a jury trial to determine whether it should be applied in a particular case.

12.

District courts are experts in determining reasonable attorney fees and expenses using the methodology set forth in Kansas Rule of Professional Conduct 1.5(a) (2020 Kan. S. Ct. R. 297).

Appeal from Leavenworth District Court; DAVID J. KING, judge. Opinion filed May 15, 2020. Affirmed and remanded with directions.

*Kurt S. Brack*, of Brown & Ruprecht, PC, of Kansas City, Missouri, for appellant.

*Gary A. Nelson*, of Leavenworth, for appellee Estate of Ronald H. Foster, and *William E. Pray*, of Leavenworth, for appellee Terrie Foster.

Before HILL, P.J., BUSER and BRUNS, JJ.

BRUNS, J.: In this interlocutory appeal, Evelyn Harder challenges the district court's ruling that she is not entitled to a jury trial to determine an award of attorney fees and expenses in two cases consolidated for appeal. Both cases arise out of a dispute over the sale of real property from Ronald Foster—who is now deceased—to Harder. The first lawsuit was filed in 2013 and the second was filed in 2015. This is the second time these cases have been before our court. In *Harder v. Foster*, 54 Kan. App. 2d 444, 401 P.3d 1032 (2017) (*Harder I*), this court affirmed the district court's decision in part but remanded both cases for consideration of Harder's claims for attorney fees and expenses against Foster's estate.

On remand, the district court determined that Harder's claim for attorney fees and expenses should be decided by the court and not by a jury. Subsequently, our court granted a petition for interlocutory appeal. For the reasons set forth in this opinion, we conclude that Section 5 of the Kansas Constitution Bill of Rights does not guarantee the right to a jury trial to determine an award of attorney fees and expenses. We also find that Harder waived her request for a jury trial to determine attorney fees and expenses in the 2013 case. In addition, we find that Harder's claim for attorney fees and expenses under the third-party litigation exception to the American rule is an equitable claim that should be decided by the district court—not by a jury. Thus, we affirm the district court's decision and remand this matter for further proceedings consistent with this opinion.

FACTS

The underlying facts of the two cases consolidated for appeal were set forth in *Harder I*. In the opinion, this court summarized the factual and procedural history of the two cases as follows:

4

"Evelyn Harder bought property with a house, dam, and lake from Ronald Foster. Shortly thereafter, Harder discovered that the dam, which Foster had assured her did not have any problems, was in fact illegal and would need extensive repairs. Harder filed suit against Foster [in 2013], and the jury found Foster guilty of negligent misrepresentation, intentional misrepresentation, and breach of contract. The parties' Residential Real Estate Contract provided that the party who breached the contract would pay any attorney fees the nonbreaching party incurred 'in connection with the default,' so Harder filed a motion requesting attorney fees incurred up through the verdict. The court granted her motion for attorney fees, but the issue took months to litigate. Harder filed a second motion for attorney fees requesting compensation for the fees generated while litigating the first motion. The district court denied her motion, holding that the fees incurred defending the first award of attorney fees were not generated 'in connection with the default.' Foster appealed.

"After the trial and the first motion for attorney fees, Harder filed a second lawsuit against Foster [in 2015], three of his children, and his son-in-law [under the Uniform Fraudulent Transfer Act]. Her petition alleged that Foster had fraudulently transferred all of the proceeds of the property sale to his family members for no consideration, leaving him unable to satisfy the judgment. She asked 'to have the transfers avoided, set aside, and held for naught; for an attachment of the assets transferred; for execution on the transferred assets; and for injunctive relief prohibiting further disposition of the transferred assets.' She later asked the court for leave to amend her petition to add a claim for punitive damages. Foster died a few months later, and his estate was substituted as a party. The estate then paid the judgment from the first case in full and filed a motion for summary judgment on Harder's second lawsuit. The district court granted the motion, holding that payment of the judgment extinguished Harder's fraudulent conveyance claim. Foster appealed the district court's grant of summary judgment to Foster and the denial of her request to amend her petition. Both cases were consolidated on appeal." 54 Kan. App. 2d at 445-46.

In *Harder I*, this court agreed that the district court appropriately granted summary judgment on Harder's statutory claim and that it properly denied her motion for leave to amend her petition in the 2015 case to include a claim for punitive damages. However,

the district court's decision to deny attorney fees and expenses in both cases was reversed. 54 Kan. App. 2d at 474-75. Consequently, this court remanded the two cases to the district court "for determination of any attorney fees to be assessed against Foster's estate." 54 Kan. App. 2d at 475.

In addressing the request for attorney fees and expenses in the 2013 case in *Harder I*, this court found that "[t]he district court erred when it held that [attorney] fees generated in defending the postverdict motions were not generated in connection with the [breach of the real estate sales contract] and therefore not recoverable." The court noted that "payment of attorney fees was within the contemplation of the parties at the time of contracting." 54 Kan. App. 2d at 455-56. As a result, this court concluded that remand of the 2013 case was appropriate "for a determination of the amount of attorney fees to be awarded, a fact that remains in the sound discretion of the district court." 54 Kan. App. 2d at 460.

Turning to Harder's claim for attorney fees and expenses in the 2015 case, this court found that "Kansas adheres to the American rule" that "proscribes courts from awarding attorney fees unless specifically authorized by statute or contract." The court then found that the Uniform Fraudulent Transfer Act (UFTA) does not provide for statutory attorney fees. Thus, this court held that "under the American rule, attorney fees are not allowed under the UFTA." 54 Kan. App. 2d at 463.

Even so, this court remanded the 2015 case to allow Harder the opportunity to attempt to prove that she is entitled to recover attorney fees and expenses under the third-party litigation exception to the American rule. 54 Kan. App. 2d at 463 (quoting *Hawkinson v. Bennett*, 265 Kan. 564, 575, 962 P.2d 445 [1998]). In doing so, it was noted that even if Harder succeeds in establishing that the third-party litigation exception to the American rule applies, "she is only able to recover attorney fees specifically related

6

to the third-party claims." 54 Kan. App. 2d at 473. For these reasons, this court remanded the 2015 case to the district court for the limited purpose of determining "whether the principles outlined [in the opinion regarding the third-party litigation exception] apply and what if any attorney fees are in order . . . ." 54 Kan. App. 2d at 474.

On remand, the district court held a joint pretrial conference in the 2013 and 2015 cases. At the pretrial conference, Harder's counsel asserted that his client had a right to have a jury determine attorney fees and expenses in both cases. In denying the request for a jury trial on the issue of attorney fees and expenses in the 2013 case, the district court pointed out that Harder's counsel was taking an inconsistent position from the one he had taken during trial and at posttrial hearings. Specifically, the district court noted Harder's counsel had "argued long and hard" that the question of attorney fees and expenses should be decided by the court and not by a jury. Ultimately, the district court determined that the remaining issues in both cases will be heard by the Court and not a jury.

Thereafter, this court granted Harder's petition for interlocutory appeal.

ANALYSIS

*Section 5 of the Kansas Constitution*

Section 5 of the Kansas Constitution Bill of Rights provides that "[t]he right of trial by jury shall be inviolate." In a civil context the right to a jury trial is codified in K.S.A. 2019 Supp. 60-238. Nevertheless, the right to a jury trial in a civil action is not absolute. Rather, Section 5 of the Kansas Constitution Bill of Rights only preserves the common law right to a jury trial as it existed at the time of its adoption. *Hilburn v. Enerpipe Ltd.*, 309 Kan. 1127, 1133-34, 442 P.3d 509 (2019).

7

The Kansas Constitution was adopted by the delegates to the Wyandotte Constitutional Convention on July 29, 1859. A few months later, on October 4, 1859, the Kansas Constitution was approved by popular vote. Accordingly, Section 5 of the Kansas Constitution Bill of Rights does not guarantee a right to a jury trial to resolve a claim for attorney fees and expenses unless it can be shown that such a right existed at common law in 1859.

As the Kansas Supreme Court has found, there was no right to recover attorney fees at common law. *Wolf v. Mutual Benefit*, 188 Kan. 694, 700, 366 P.2d 219 (1961). Although English courts have regularly awarded attorney fees to prevailing parties for several centuries, the authority to award attorney fees in Great Britain has been traditionally granted by statute—not under common law. See *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247, 95 S. Ct. 1612, 44 L. Ed. 2d 141 (1975). Moreover, under the English rule, attorney fees are not awarded by a jury. Instead, "separate hearings [are held] before special 'taxing Masters' in order to determine the appropriateness and the size of an award of counsel fees." 421 U.S. at 247 n.18.

In the years following the American Revolution, the English rule was overwhelmingly rejected throughout the United States. In *Arcambel v. Wiseman*, 3 U.S. (3 Dall.) 306, 1 L. Ed. 613 (1796), the United States Supreme Court held that "[t]he general practice of the United States is in opposition to [the English rule]." Soon, the American rule—under which each party pays its own attorney fees and expenses unless a statute or contract specifically authorizes assessment to the other party—replaced the English rule that had been followed in British colonies. The American rule quickly spread across the new nation, and it continues to be the predominant method of handling the payment of attorney fees and expenses across the United States. See Leubsdorf, *Toward a History of the American Rule on Attorney Fee Recovery*, 47 Law & Contemp. Probs. 9 (Winter 1984).

8

Kansas continues to adhere to the American rule, and courts are prohibited from awarding attorney fees and expenses unless specifically authorized by statute or contract. *Snider v. American Family Mut. Ins. Co.*, 297 Kan. 157, 162, 298 P.3d 1120 (2013); see *Robinson v. City of Wichita Employees' Retirement Bd. of Trustees*, 291 Kan. 266, 279, 241 P.3d 15 (2010); *Harder I*, 54 Kan. App. 2d at 463. Even so, in the exercise of their equitable powers, courts have recognized a few exceptions to the American rule. See *Sprague v. Ticonic National Bank*, 307 U.S. 161, 164, 59 S. Ct. 777, 83 L. Ed. 1184 (1939). One of these exceptions is the third-party litigation exception—sometimes called the "collateral litigation" or "tort of another" exception—to the American rule. As this court recognized in *Harder I*, Kansas recognizes this equitable exception to the American rule to protect a party who is drawn into litigation because of the wrongful conduct of a third-party. 54 Kan. App. 2d at 463-64; see also *Scott-LaRosa v. Lewis*, 44 N.E.3d 89, 96 (Ind. Ct. App. 2015).

Under the third-party litigation exception to the American rule, a party forced to litigate against a third party may recover attorney fees and expenses that are otherwise not allowable by statute or contract if certain factors can be established. 54 Kan. App. 2d at 464. As also noted in *Harder I*, the Kansas Supreme Court first recognized a similar principle in *First National Bank of Hutchinson v. Williams*, 62 Kan. 431, 434, 63 P. 744 (1901). Of course, this was more than 40 years after the Kansas Constitution was approved by the voters in the Kansas Territory.

Based on our review of the history of Kansas law, we find no authority to suggest that there was a common law right to recover attorney fees and expenses when the Kansas Constitution was adopted—much less that a jury must make a determination regarding when attorney fees should be awarded. Likewise, we find no authority to suggest that a determination of whether the third-party litigation exception to the American rule is a common law right or that it was recognized in 1859. Rather, we find

9

that it is an equitable exception to the general rule prohibiting courts from awarding attorney fees to a prevailing party in the absence of statutory or contractual authority. Accordingly, we conclude that Section 5 of the Kansas Constitution Bill of Rights does not guarantee the right to a jury trial to determine whether attorney fees and expenses should be awarded, to determine a reasonable amount of attorney fees to be awarded, or to determine whether the third-party litigation exception to the American rule should be applied.

*Determination of Attorney Fees in 2013 Case*

At the outset, we note that the 2013 case was tried to verdict more than five years ago without Harder submitting her contractual claim for attorney fees and expenses to the jury. Furthermore, as this court found in *Harder I*, the judgment rendered by the jury in the 2013 case has been fully and completely satisfied by Foster's estate. Nevertheless, Harder now contends that she is entitled to a separate jury trial in the 2013 case solely on her claim for attorney fees and expenses arising out of the real estate contract.

It is undisputed that the residential real estate contract executed by Harder and Foster required a party in default on the agreement to reimburse the nondefaulting party for reasonable legal expenses, including attorney fees. Yet a review of the record reflects that Harder voluntarily chose not to present her claim for attorney fees and expenses under the contract to the jury in the 2013 case. Instead, she requested—through her attorney—that the claim for attorney fees and expenses be resolved by the district court after completion of the jury trial.

On the last day of the jury trial, the district court discussed Harder's claim for attorney fees and expenses with her attorney. Specifically, Harder's counsel represented to the district court:

10

"[PLAINTIFF'S COUNSEL]: . . . Finally, his last argument with regard to attorney's fees. Your Honor, it was pled in the petition, and those attorney's fees obviously are ongoing. There was a basis for them under the contract between Mr. Foster and Ms. Harder.

"THE COURT: That wasn't a claim that was included in the pretrial order, was it?

"[PLAINTIFF'S COUNSEL]: It was included in the pretrial questionnaires that was submitted—

"THE COURT: It was not included in the pretrial order. We didn't go through that at the pretrial conference, did we?

"[PLAINTIFF'S COUNSEL]: We—Your Honor, we did in the sense of—I think you were going to take the pretrial questionnaires, kind of merge them together.

"THE COURT: And I did. And I—

"[PLAINTIFF'S COUNSEL]: And it was listed.

"THE COURT: —generated—and I generated a pretrial order. It did not include any claim for attorney's fees and no objection was made to the pretrial order, was it?

"[PLAINTIFF'S COUNSEL]: Judge, there was no objection to the pretrial order.

"THE COURT: Okay. And there was no evidence presented regarding attorney's fees for submission to this fact finder?

"[PLAINTIFF'S COUNSEL]: At this point, no, Your Honor.

"THE COURT: Let's say that I was to allow the pretrial order to be amended to conform to the evidence at the time of trial. And—and the only evidence that was in the trial of this case would be that there was inquiry made of the plaintiff while she was testifying, that she had a contract and referenced the contract's provision regarding an entitlement to attorney's fees if there was a breach of the contract.

"[PLAINTIFF'S COUNSEL]: Correct.

"THE COURT: And that was the only evidence.

"[PLAINTIFF'S COUNSEL]: Correct.

"THE COURT: There—there was no submission as to—to an amount of attorney's fees or anything of the nature.

"[PLAINTIFF'S COUNSEL]: That's correct, Your Honor.

"THE COURT: Okay.

"[PLAINTIFF'S COUNSEL]: And that's because we haven't actually completed all of the attorney's fees that have been incurred in the case.

11

"THE COURT: How can this jury award attorney fees then?

"[PLAINTIFF'S COUNSEL]: Well, I think that's probably a matter for the Court's decision, not maybe the jury's decision.

"THE COURT: So you're not asking that the jury determine an award of attorney fees?

"[PLAINTIFF'S COUNSEL]: *Correct*, Your Honor. Because it's still ongoing. It's kind of difficult to hit a moving target." (Emphasis added.)

After the jury returned a verdict in favor of Harder, she filed a posttrial motion in which she asked the district court to grant her attorney fees and expenses based on the real estate contract. Her motion was successful, and the district court ordered Foster to pay $51,862 in attorney fees and $13,871.34 in expenses to Harder. Later, Foster moved to set aside the district court's order granting attorney fees and expenses. At a hearing on the motion, Harder's attorney explicitly argued to the district court that the question of attorney fees and expenses arising out of the real estate contract "is not a jury decision."

At a subsequent hearing, Harder's attorney again emphatically argued that the decision on awarding of attorney fees and expenses arising out of the real estate contract is one for the judge—not for a jury. Harder's attorney told the district court that because the language of the real estate contract had a specific requirement that the attorney fees be reasonable, it "puts [the claim for attorney fees and expenses] in your domain to decide that issue and [it is] not a jury decision." In addition, Harder's counsel argued that the district court should decide the issue because the PIK Jury Instructions lack an instruction to assist a jury in awarding attorney fees and expenses. After considering these arguments, the district court upheld its prior order granting Harder attorney fees and expenses arising out of the real estate contract.

Later, Harder filed a second motion for attorney fees and expenses arising out of legal work performed after the jury trial related to various posttrial motions. At a hearing on the second motion, Harder's counsel argued that the additional attorney fees and

12

expenses were incurred "in connection with the default." Once again, Harder's attorney argued to the district court that a determination of his client's claim for attorney fees and expenses arising out of the real estate contract should be made by the district court—not by a jury.

In denying Harder's second motion for attorney fees and expenses, the district court noted the confusion about whether Harder had preserved a claim for attorney fees and expenses in the pretrial order. In addition, the district court pointed out the deluge of motions and delays that followed the jury's verdict in the 2013 case. Ultimately, the district court found that "none of this had anything to do with actions of the defendant" and that "the amount of time that was devoted really related to certain failures of [Harder's] counsel to present a record supporting the award of attorney's fees." Harder then filed her first appeal to this court.

In *Harder I*, this court held that attorney fees and expenses incurred as a result of defending the jury verdict fell within the language in the real estate contract. In remanding this issue to the district court, this court found:

> "Here, the parties agreed that the defaulting party would pay the attorney fees of the nondefaulting party. Thus, payment of attorney fees was within the contemplation of the parties at the time of contracting. It is reasonably foreseeable that, should the defaulting party attempt to evade its duty to pay attorney fees, the nondefaulting party would incur even more attorney fees defending its rights under the contract. It was reasonably foreseeable to Foster that Harder would defend her rights under the contract, the rights that were only bestowed upon Harder because Foster defaulted." 54 Kan. App. 2d at 455-56.

On remand, the district court held a pretrial conference on the claim for attorney fees and expenses in both cases. In contradiction to the position he had taken during the

13

jury trial and at several posttrial hearings, Harder's counsel now argued that his client has a right to a jury trial to determine her claim for attorney fees and expenses in the 2013 case. In rejecting this argument, the district court found that "the plaintiff was taking an inconsistent position about how . . . the issue of attorney's fees should be determined. Having argued long and hard that it was proper to not have the attorney's fee[s] in the 2013 . . . case determined by a jury but rather by the Court." We agree with the concerns expressed by the district court about the inconsistent positions taken by Harder's counsel.

In this interlocutory appeal, Harder argues the district court erred in not granting a jury trial on the issue of attorney fees and expenses. Specifically, Harder argues that despite the inconsistent positions taken by her attorney before the district court, there has been no "consent to a withdrawal of the jury demand." See K.S.A. 2019 Supp. 60-238(d) (addressing the waiver and withdrawal of a demand for jury trial) and K.S.A. 2019 Supp. 60-239(a)(1) (addressing stipulations to withdraw a demand for a jury trial). In response, Foster contends that Harder should be held to the position previously taken by her attorney who "insisted that the District Court had the authority to hear and decide the amount of attorney fees to be awarded."

In *Dickinson, Inc. v. Balcor Income Properties Ltd*., 12 Kan. App. 2d 395, 745 P.2d 1120 (1987), this court decided a similar issue to the one presented in this case. In *Dickinson*, the plaintiff likewise argued that the district court erred in not granting a jury trial on the issue of attorney fees and expenses in an action for breach of contract. Finding that the plaintiff's argument lacked merit, this court found that "'[c]onduct or acquiescence inconsistent with an intention to insist on a jury trial may constitute waiver thereof.'" 12 Kan. App. 2d at 401 (quoting *Westamerica Securities, Inc. v. Cornelius*, 214 Kan. 301, 306, 520 P.2d 1262 [1974]). Ultimately, this court determined that a plaintiff "may not complain of matters to which it has consented, or take advantage of error which it has invited or in which it has participated. [Citation omitted.]" 12 Kan. App. 2d at 401.

14

In this case, a review of the record reveals that Harder consented or acquiesced—through the representations made by her attorney at the jury trial and at posttrial hearings—to the district court deciding the issue of attorney fees and expenses in the 2013 case. As discussed above, Harder's attorney repeatedly argued to the district court that the question of attorney fees and expenses arising out of the real estate contract should not be decided a jury. So, we have no difficulty finding the position now taken by Harder to be inconsistent with her earlier position.

Moreover, the error that Harder now claims was invited by Harder's counsel based on his repeated representations to the district court at trial as well as during posttrial hearings. An invited error is "[a]n error that a party cannot complain of on appeal because the party, through its conduct, encouraged or prompted the trial court to make the erroneous ruling." Black's Law Dictionary 660 (10th ed. 2014). See *Thoroughbred Assocs. v. Kansas City Royalty Co.*, 297 Kan. 1193, 1203, 308 P.3d 1238 (2013) (party may not invite error and then complain of that error as a ground for reversing an adverse judgment). "Where a party procures a court to proceed in a particular way thereby inviting a particular ruling, that party is precluded from assailing such proceeding and ruling on appellate review." *In re Estate of Broderick*, 34 Kan. App. 2d 695, Syl. ¶ 10, 125 P.3d 564 (2005).

Here, the record reveals that even though the district court expressed reluctance to do so, Harder's attorney was successful in persuading it that the claim for attorney fees and expenses arising out of the real estate contract should not be decided by a jury. Significantly, the 2013 case was tried to a jury more than five years ago and the judgment has been satisfied. For Harder's attorney to argue an inconsistent position at this late date—after the repeated arguments made at trial and during posttrial hearings—is at best questionable. Consequently, we find that Harder should not be allowed to capitalize on the alleged error that her attorney invited.

15

In summary, we find that the repeated representations made by Harder's attorney below are sufficient to establish consent or acquiescence to the district court's decision to deny a jury trial on the issue of attorney fees and expenses arising out of the real estate contract. We also find that even if the district court committed error in denying the request for a jury to determine Harder's claim for attorney fees and expenses, any error was invited by her attorney. Thus, we conclude that the district court did not err in denying Harder's request for a jury trial on the issue of attorney fees and expenses in the 2013 case.

*Application of the Third-Party Exception in 2015 Case*

Harder also contends that the district court erred in denying her request for a jury to determine the issue of whether the third-party litigation exception to the American rule is applicable in the 2015. For the reasons set forth above, Harder does not have a right to a jury trial on this issue under Section 5 of the Kansas Constitution Bill of Rights. Moreover, this court previously ruled in *Harder I* that "under the American rule, attorney fees are not allowed under the UFTA." 54 Kan. App. 2d at 463. Because neither party sought review of the decision in *Harder I*, the legal conclusions announced in that opinion now serve as "the law of the case" under which the parties and district court must abide.

"Under the law of the case doctrine, when a second appeal is brought in the same case, the first decision is the settled law of the case on all questions involved in the first appeal, and reconsideration will not normally be given to such questions." *State v. Kleypas*, 305 Kan. 224, Syl. ¶ 2, 382 P.3d 373 (2016). "The law of the case doctrine prevents a party from serially litigating an issue on appeal already presented and decided in the same proceeding." *Garetson Brothers v. American Warrior, Inc.*, 56 Kan. App. 2d 623, Syl. ¶ 7, 435 P.3d 1153 (2019). The doctrine promotes judicial efficiency while

16

allowing litigants a full and fair opportunity to present their arguments on a particular point. See *State v. Parry*, 305 Kan. 1189, 1194, 390 P.3d 879 (2017).

In *Harder I*, this court remanded the 2015 case to the district court for the limited purpose of making "a determination whether the principles outlined [in the opinion regarding the third-party litigation exception] apply and what if any attorney fees are in order . . . ." 54 Kan. App. 2d at 474. As discussed above, the United States Supreme Court has found that the authority to recognize exceptions to the American rule falls within the equitable powers of the courts. *Sprague*, 307 U.S. at 164; see *Hall v. Cole*, 412 U.S. 1, 5, 93 S. Ct. 1943, 36 L. Ed. 2d 702 (1973). Thus, we find that the question of whether the third-party litigation exception to the American rule applies is firmly grounded in equity.

As Harder recognizes in her brief, "[i]t has been uniformly held [by the Kansas Supreme Court], since the early history of the state that a party is not entitled to a jury trial as a matter of right in a suit in equity." *Spena v. Goffe*, 119 Kan. 831, 833, 241 P. 257 (1925) (citing *Kimball v. Connor*, 3 Kan. 414, 432 [1866]); see also *Vanier v. Ponsoldt*, 251 Kan. 88, Syl. ¶ 6, 833 P.2d 949 (1992); *Jensen Int'l, Inc. v. Kelley*, 29 Kan. App. 2d 836, 843, 32 P.3d 1205 (2001). "In determining whether an action is one in equity, the test is whether the essential nature of the action is grounded on equitable rights and is one in which equitable relief is sought." *In re Petition of City of Moran*, 238 Kan. 513, Syl. ¶ 1, 517-18, 713 P.2d 451 (1986). Because exceptions to the American rule arise out of the court's equitable powers and because they are a means to seek equitable relief not allowable by statute or contract, we conclude that there is no right to a jury trial to decide claims asserted under the third-party litigation exception.

In remanding the issue of attorney fees in *Harder I*, this court anticipated that the district court—not a jury—would determine whether Harder is able to establish the

17

necessary elements to recover under the third-party exception to the American rule in the 2015 case. In particular, this court found that the district court should determine whether Harder is able to show that "(1) the defendant committed a tort or violated a contractual duty; (2) third-party litigation is the natural and proximate consequence of the defendant's wrongdoing; (3) it was necessary for the claimant to engage in the third-party litigation; and (4) the claimant exercised good faith in the third-party litigation." 54 Kan. App. 2d at 473. Furthermore, this court provided guidance to assist the district court on remand in deciding whether the third-party litigation exception applies in the 2015 case. 54 Kan. App. 2d at 474.

We conclude that the district court did not err in deciding that the limited issue upon which the 2015 case was remanded should be determined by the court rather than by a jury. As a result, we once again remand this matter to the district court for a determination of whether the principles outlined in *Harder I* regarding the applicability of the third-party litigation exception should be applied and, if so, to decide the amount of attorney fees and expenses that reasonably relate to the claims asserted by Harder against third parties. In reaching this conclusion, we note that the district court is an expert in determining reasonable attorney fees and expenses. So, it is "well within [the court's] discretion to make this determination and use KRPC 1.5(a) as the methodology to resolve this dispute." *Westar Energy, Inc. v. Wittig*, 44 Kan. App. 2d 182, 206, 235 P.3d 515, 530 (2010) (citing *Johnson v. Westhoff Sand Co.*, 281 Kan. 930, 940-41, 135 P.3d 1127 [2006]).

Affirmed and remanded with directions.

18