NOT DESIGNATED FOR PUBLICATION

No. 126,411

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

CURTIS RODINA,
*Appellee*,

v.

ALBERTO CASTANEDA, D.D.S.,
*Appellant*.

MEMORANDUM OPINION

Appeal from Wyandotte District Court; WILLIAM P. MAHONEY, judge. Oral argument held October 16, 2024. Opinion filed February 14, 2025. Affirmed in part, reversed in part, and remanded with directions.

*Andrew D. Holder*, of Fisher, Patterson, Sayler & Smith, L.L.P., of Overland Park, for appellant.

*Kyle A. Branson*, of Mogenson & Branson, LLC, of Mission, for appellee.

Before ARNOLD-BURGER, C.J., GREEN and HILL, JJ.

GREEN, J.: This is an action for dental malpractice. In a previous suit, Curtis Rodina sued Timothy T. Taylor, D.D.S., P.A.—the dental practice—and Sonya Cummings—an owner of the practice. He was awarded a default judgment for economic and noneconomic damages in the total amount of $285,000. Rodina then brought this dental negligence suit against Alberto Castaneda, D.D.S., alleging that Dr. Castaneda was the dentist who performed negligent dental work at the dental practice that caused his injuries. In this suit, Rodina filed a statement of monetary damages seeking $1,000,000 against Dr. Castaneda for his dental negligence claims. The district court dismissed the

suit based on the one-action rule. A panel of this court reversed because when the district court entered default judgment against the dental practice and Cummings, it expressly made no apportionment of fault or determination of comparative fault. Thus, Rodina was entitled to a judicial determination of comparative fault.

When the case returned to the district court, it ruled that—per the Court of Appeals mandate—the only issue for trial was comparative fault. Rodina's damages had already been determined in the default case and could not be increased or decreased by either party in this case. The parties stipulated that the damages had been established at $285,000. At trial, Dr. Castaneda claimed that another dentist, Dr. Steven Jones, was at fault. Rodina moved for a directed verdict on Dr. Castaneda's claim of comparative fault of Dr. Jones, which the district court granted. The resulting verdict form allowed the jury to assign fault to Dr. Castaneda or to Rodina or to both Castaneda or Rodina. The jury found Dr. Castaneda was 100% at fault. Rodina sought prejudgment interest under K.S.A. 16-201, which the district court denied. Both parties appealed.

The issues on appeal are (1) did the district court misapply the mandate from the previous appeal by ruling that the only issue for trial was comparative fault; (2) if the district court misapplied the mandate, did alternative grounds exist to treat the damages set in the default case as binding in this case; (3) did the district court violate Dr. Castaneda's rights under section 5 of the Kansas Constitution Bill of Rights by removing the issue of damages from the jury's consideration; and (4) did the district court err by refusing to allow the jury to consider the comparative fault of Dr. Jones? The cross-appeal issue is whether the district court erred in denying prejudgment interest. The majority affirms in part, reverses in part, and remands this case for a new trial on the issue of damages and liability.

FACTS

Curtis Rodina was a patient of the dental offices of Timothy T. Taylor, D.D.S., P.A. for over 15 years. In December 2019, Rodina filed suit in the Wyandotte County District Court against Timothy T. Taylor, D.D.S., P.A., the dental practice; Sonya Cummings, an owner of the practice; and Timothy Taylor, D.D.S., the dentist. He alleged he received inappropriate dental care from unidentified dentists as well as violations of the Health Insurance Portability and Accountability Act and the Kansas Consumer Protection Act. Rodina dismissed Dr. Taylor from the suit after learning that Dr. Taylor was retired and not practicing dentistry when he was injured. Neither the dental practice nor Cummings responded to the suit.

On May 18, 2020, the district court held a default hearing. Neither defendant appeared at the hearing. The court heard evidence concerning Rodina's treatment at the dental practice and his damages. Rodina testified that he was seen by about three different dentists after Dr. Taylor retired. He had a number of implants and bridges installed. Ultimately, he had to be seen by an outside oral surgeon that removed all of the previous work done at Dr. Taylor's office. The district court granted Rodina a default judgment and awarded him (1) $5,000 for violations of the KCPA, (2) $85,000 in economic damages, and (3) $200,000 for noneconomic damages. The journal entry stated: "Because Judgment is entered by default, no apportionment of fault or comparative negligence assessment is made or needs to be made."

Three days earlier, Rodina filed a second suit in Wyandotte County District Court against Alberto Castaneda, D.D.S. Rodina alleged that Dr. Castaneda was the dentist who performed the negligent dental work and caused his injuries. Dr. Castaneda moved to dismiss the suit based on the "one-action" rule and the issue preclusion doctrine. The district court granted the motion to dismiss, ruling that the suit was barred by the "one-action" rule.

3

Rodina appealed the dismissal to this court. A panel of this court reversed the district court's decision and remanded the case to the district court. See *Rodina v. Castaneda*, 60 Kan. App. 2d 384, 494 P.3d 172 (2021). The panel pointed out the one-action rule generally states that "all issues of liability and fault should be determined in one action, rather than in multiple lawsuits." 60 Kan. App. 2d at 387. After reviewing the development of the one-action rule by our Supreme Court, the panel held that the plaintiff, Rodina, may pursue separate actions against tortfeasors when there has been no trial and judicial determination of comparative fault. When the district court entered default judgment against the dental practice and Cummings, it expressly made no apportionment of fault or determination of comparative fault. Thus, Rodina was entitled to a judicial determination of comparative fault. 60 Kan. App. 2d at 391-92. The panel stated:

> "Dr. Castaneda is correct that Rodina cannot recover additional damages from him. The trial court in the original suit awarded damages for the entire action. Rodina, however, is entitled to a judicial determination of comparative fault, and, if it is determined that Dr. Castaneda was at least partially at fault, the trial court can order Dr. Castaneda to pay his proportionate share of the damages." 60 Kan. App. 2d at 391.

The panel concluded: "The trial court here erred in granting Dr. Castaneda's motion to dismiss. Rodina is entitled to a trial and judicial determination of comparative fault. Thus, we reverse the trial court's grant of Dr. Castaneda's motion to dismiss and remand for further proceedings consistent with this opinion." 60 Kan. App. 2d at 392.

Dr. Castaneda moved for rehearing. He argued that the Court of Appeals decision bound him to the following:

> "to a judgment as to damages rendered in a proceeding to which he was not a party. In doing so, he has no ability to argue in the present action that his alleged actions and/or omissions did not cause Mr. Rodina's damages, let alone argue whether the amount of

damages Mr. Rodina received in the Default Judgment are a fair and just amount for the loss he claims."

Rodina took the position that Dr. Castaneda was not bound by the default judgment damage award as that was not an issue before the Court of Appeals. The jury could award more or less than the default judgment. The motion for rehearing was denied.

Dr. Castaneda petitioned for review by our Supreme Court. He again argued that the Court of Appeals' decision bound him to the damages awarded in the default judgment. He asked our Supreme Court to review that ruling. Rodina agreed with Dr. Castaneda that our Supreme Court should review that particular holding and reverse it because that issue was not on appeal:

> "Defendant/Appellee has asked this Court to review the decision of the Court of Appeals that held that the Defendant/Appellee is bound by the amount of damages awarded in the default judgment against other parties. Plaintiff agrees. The decision of the Court of Appeals is not in line with the prior decisions of this Court and the Court of Appeals with regard to the Kansas system of comparative fault."

Rodina agreed that Dr. Castaneda was entitled to a trial on the issue of damages. The petition for review was denied.

Then Dr. Castaneda filed his answer to Rodina's negligence action against him in the district court. He asserted, among other claims, that (1) Rodina's alleged damages must be limited in accordance with *Martinez v. Milburn Enterprises, Inc.*, 290 Kan. 572, 233 P.3d 205 (2010), and that (2) "[t]he Court of Appeals' decision, as applied to Defendant, denies him Due Process of law under the U.S. Constitution and/or Kansas Constitution."

5

Rodina moved to strike those defenses on the grounds that the damages could not be relitigated based on the Court of Appeals decision and that Dr. Castaneda could not appeal the Court of Appeals decision to the district court. In response, Dr. Castaneda contended that he should be able to argue at trial the amount of damages sustained by Rodina because he was not a party to the other default action. In doing so, Castaneda stated that he was preserving the issue for a future appeal and that the Court of Appeals decision was "merely interlocutory."

The district court considered the motion. Dr. Castaneda's counsel argued that "the Court of Appeals . . . married my client to a damage award in a lawsuit where he was not a defendant and had no opportunity to defend which I believe denies him due process under either the Kansas constitution or the United States constitution." The district court ruled that based on the Court of Appeals mandate the only issue for trial was comparative fault. The damages had already been determined and could not be increased or decreased by either party. The district court ruled it could not find that the appellate court had denied Dr. Castaneda due process, but Dr. Castaneda could preserve the issue for appeal.

In the pretrial order, Dr. Castaneda denied that the previous Court of Appeals opinion was correctly decided, but "for purposes of this trial, would admit that the damages for dental malpractice have been established at $285,000 by the Court of Appeals as a matter of law."

At trial, Dr. Castaneda denied that he was at fault. He claimed that another dentist, Dr. Steven Jones, was responsible for the negligent treatment of Rodina. He further asserted that Rodina was negligent in failing to follow his proposed treatment plan. Rodina moved for a directed verdict on Dr. Castaneda's claim of comparative fault of other individuals. The district court granted the motion with respect to Dr. Jones and other nonparties. The resulting verdict form allowed the jury to assign fault to Dr. Castaneda or to Rodina or to both Castaneda or Rodina.

6

The jury found that Dr. Castaneda was 100% at fault. The jury was instructed: "The amount of damages sustained by the plaintiff is not an issue for you to decide. You need only decide the issue of fault."

Rodina sought prejudgment interest under K.S.A. 16-201. The district court denied the claim for prejudgment interest, ruling that "[a]lthough the damages have been established and binding on Dr. Castaneda, his responsibility for some or all of the damages was not established until trial of the above captioned and numbered case." The district court entered judgment against Dr. Castaneda for $285,000 plus costs.

Dr. Castaneda moved for a new trial. In the motion, he stated the following:

"[T]he Court of Appeals held the Previous Lawsuit awarded damages for the entire action, and that Dr. Castaneda was bound by the damages amount set in the Default Judgment. . . .

. . . .

". . . The jury was not charged with determining the amount of damages Plaintiff sustained due to the *Mandate* which married Dr. Castaneda to the damages awarded in the Previous Lawsuit."

He argued that, among other things, the court erred by not allowing the jury to determine the comparative fault of Dr. Jones and that the court violated his constitutional right to a jury trial by finding Rodina's damages were previously determined by the default judgment in the previous suit. The district court denied the motion.

Dr. Castaneda timely appeals. Rodina timely cross-appeals.

ANALYSIS

APPEAL

I. *Did the district court commit reversible error by misapplying the mandate from* Rodina v. Castaneda*, 60 Kan. App. 2d 384, 494 P.3d 172 (2021)?*

Dr. Castaneda argues for the first time on appeal that the district court misinterpreted the mandate from *Rodina v. Castaneda*, 60 Kan. App. 2d 384, 494 P.3d 172 (2021), because some of the statements by the panel were judicial dictum. Specifically, the panel stated: "Dr. Castaneda is correct that Rodina cannot recover additional damages from him. The trial court in the original suit awarded damages for the entire action." 60 Kan. App. 2d at 391. He argues, as dictum, that language was not binding on the district court and not the law of the case. Kansas' one-action rule jurisprudence does not state that when the rule is found inapplicable damages set in the previous action are controlling in a later action.

Rodina argues that Dr. Castaneda's position is new. To the district court, Dr. Castaneda agreed with the district court that the Court of Appeals remanded the case for a trial on the issue of liability only. Dr. Castaneda "just thought the Court of Appeals was wrong in doing that and suggested that the District Court somehow overrule the Court of Appeals."

Rodina is correct. Dr. Castaneda did not preserve the issue regarding interpretation of the mandate for appellate review. Before this appeal, Dr. Castaneda never argued that part of the Court of Appeals opinion could be disregarded as dicta. He did not argue that the district court was misinterpreting the mandate. Rather, he took a contrary position. He consistently argued that the Court of Appeals opinion "married" Dr. Castaneda to the default judgment damage award.

Generally, a party cannot invite error and then complain of the error on appeal. *Water Dist. No. 1 of Johnson Co. v. Prairie Center Dev.*, 304 Kan. 603, 618, 375 P.3d 304 (2016). And issues not raised before the district court cannot be raised on appeal. *In re Adoption of Baby Girl G.*, 311 Kan. 798, 801, 466 P.3d 1207 (2020). There are several exceptions to that general rule that new issues cannot be raised on appeal, including the following: (1) that the newly asserted theory involves only a question of law arising on proved or admitted facts and is finally determinative of the case; (2) that consideration of the theory is necessary to serve the ends of justice or to prevent denial of fundamental rights; and (3) that the district court was right for the wrong reason. *In re Estate of Broderick*, 286 Kan. 1071, 1082, 191 P.3d 284 (2008).

Supreme Court Rule 6.02(a)(5) (2024 Kan. S. Ct. R. at 36) requires an appellant to explain why an issue that was not raised below should be considered for the first time on appeal. *State v. Johnson*, 309 Kan. 992, 995, 441 P.3d 1036 (2019). Our Supreme Court has warned that Supreme Court Rule 6.02(a)(5) would be strictly enforced, and litigants who failed to comply with this rule risked a ruling that the issue is improperly briefed and that the issue will be deemed waived or abandoned. See *State v. Daniel*, 307 Kan. 428, 430, 410 P.3d 877 (2018).

Not only has Dr. Castaneda failed to explain why this court should consider this issue for the first time on appeal, he has invited any error that the district court may have made in interpreting the mandate. Dr. Castaneda consistently argued that the Court of Appeals mandate bound him to the damage award in the default judgment. Accordingly, Dr. Castaneda has failed to comply with Supreme Court Rule 6.02(a)(5) and the majority therefore declines to review his unpreserved claim.

9

II. *Were the noneconomic damages set forth in the default judgment void?*

Dr. Castaneda first argues that the default judgment was void because noneconomic damages were not recoverable under the theories Rodina pursued in his initial petition. He argues that because Rodina did not assert a claim for negligence in his first petition, the district court erred by relying on a void and erroneous judgment to establish damages. Second, he argues that the district court lacked grounds to treat the default judgment as the conclusive measure of damages in an unrelated suit brought against a different defendant. Collateral estoppel did not apply because Dr. Castaneda was not in privity with the earlier defendants.

Rodina argues that Dr. Castaneda raises this issue for the first time on appeal and that Dr. Castaneda took the opposite position in the first appeal. Rodina is correct. For example, in Dr. Castaneda's brief filed in his first appeal, he stated the following: "[T]he issue of negligence was previously determined in the first lawsuit and necessary to support the Default Judgment, wherein Plaintiff was awarded $200,000.00 for non-economic damages (for the negligence of the defendants)." Further, in that brief, Dr. Castaneda conceded the following: "[T]he district court must have awarded damages in the first lawsuit for negligence because negligence was the only claim brought in the first lawsuit for which non-economic damages could be awarded."

Even more to the point, Dr. Castaneda's answer to Rodina's negligence claim against him did not include a claim that the default judgment was void. Also, the pretrial order did not include a claim that the default judgment was void because noneconomic damages were not recoverable under the theories Rodina pursued in his default judgment. Finally, Dr. Castaneda's motion for a new trial did not include a claim that the default judgment was void.

Even so, Dr. Castaneda's position in Rodina's negligence suit against him is based on a legal contradiction. First, Dr. Castaneda moved to dismiss Rodina's negligence suit against him, arguing that it was barred by the "one action rule." The context which we outlined earlier shows that Dr. Castaneda conceded that the district court must have awarded noneconomic damages in the first lawsuit for negligence. As stated earlier, a panel of this court rejected that argument in the first appeal. Dr. Castaneda then argued in the second appeal that the default judgment was void because noneconomic damages were not recoverable under the theories Rodina pursued in his default judgment petition.

These two contradictory arguments of Dr. Castaneda can be vividly illustrated in the following conjunctive syllogism:

(1) You cannot have your cake and eat it too.
(2) I must eat my cake!
Therefore, (3) your cake will be no longer.

Here, Dr. Castaneda is trying to have one's cake and eat it too. In other words, he is trying to have two contradictory things. For example, if Dr. Castaneda eats his cake, keeping possession of the cake is no longer possible. Dr. Castaneda's appeal argument proceeds similarly: Dr. Castaneda seems to argue that both the default judgment damages can *be* and *not be*. Like the example of the cake, once someone eats the cake, the cake is no longer a cake.

As we explained earlier in this opinion, Rodina alleged in his petition against Dr. Castaneda that he was the dentist who performed the negligent dental work which caused his injuries. And Dr. Castaneda moved to dismiss Rodina's negligent action against him based on the "one-action" rule and based on the issue preclusion doctrine. The district court granted the motion to dismiss, ruling that the suit was barred by the one-action rule. Rodina appealed the dismissal to this court. And a panel of this court reversed the district

court's decision and held that Rodina's lawsuit for negligence was not barred under the one-action rule from pursuing a second malpractice action.

Here, Dr. Castaneda ate his cake when he maintained in his initial defense against Rodina's negligent claims that the default judgment damages could *be* damages and should be barred under the one-action rule. Thus, Dr. Castaneda's keeping possession of his cake is no longer possible because it is now in his stomach. He ate his cake when he based his defense on the one-action rule. Then, when Dr. Castaneda argued in the second appeal that the default judgment damages could *not be* damages because they were void, he is attempting to eat his nonexistent cake again.

The cake argument here begins with a conjunctive proposition that contains two mutually exclusive conjuncts. Based on the metaphysical notion that something cannot both *be* and *not be*, the argument draws the necessary inference that to act to destroy the very material being of the cake is to cause it not to be.

What Dr. Castaneda is attempting to do with his two contradictory arguments has also been referred to as "you can't have it both ways" and "you can't have the best of both worlds." Dr. Castaneda's contradictory legal arguments can allow for no middle ground: No action at law could permit the default judgment damages to both *be* damages and *not be* damages. Dr. Castaneda does not explain how the default judgment damages could both *be* damages and *not be* damages. It is like saying, for example, "*It is both raining and not raining in the same place and at the same time.*" This is a logical contradiction in reasoning. Thus, Dr. Castaneda's noneconomic damages argument fails.

On another point, the majority has difficulty in concluding, as the dissent does, that subject matter jurisdiction is involved in this case. For example, the dissent completely ignores that the Wyandotte County District Court and that this court had subject matter jurisdiction over Dr. Castaneda and Rodina's negligence lawsuit that he

brought against Dr. Castaneda on May 15, 2020. Kansas courts have judicial power to hear matters over which they have jurisdiction. That jurisdiction derives from Article 3, sections 1, 3, and 6 of the Kansas Constitution. *In re A.A.-F.*, 310 Kan. 125, 135, 444 P.3d 938 (2019).

First, in his negligence petition filed against Dr. Castaneda, Rodina specifically alleged that Dr. Castaneda was negligent when he performed dental procedures on him. Second, because of Dr. Castaneda's negligence, Rodina claimed that he was damaged and sought monetary damages of $1,000,000 against Dr. Castaneda for his dental negligence claims. Third, on June 3, 2020, Dr. Castaneda was served with a copy of Rodina's petition within this state. Personal (in personam) jurisdiction was acquired over Dr. Castaneda when he was properly served as a resident of this State. *State v. Matzke*, 236 Kan. 833, 835, 696 P.2d 396 (1985).

Fourth, on July 31, 2020, Dr. Castaneda filed a motion to dismiss Rodina's negligence and malpractice petition against him. Also, the district court granted Dr. Castaneda's motion to dismiss, but a panel of this court later reversed and remanded the case to the district court. Fifth, on January 10, 2022, Dr. Castaneda filed an answer to Rodina's negligence petition. Hence, the presence of Dr. Castaneda within this state, plus service of process on him within this state, would show the indispensable ingredients for the acquisition of subject matter jurisdiction over him and Rodina's negligence action against him.

In contrast, the dissent ends with the following conclusion: "I would hold that the jury should decide the amount of malpractice damages in this case, not some judge in a default proceeding where the petition had no claim for malpractice." The majority agrees that a jury should decide the amount of malpractice damages in this case. But the dissent fails to acknowledge that Rodina's negligence petition, filed on May 15, 2020, against Dr. Castaneda had a claim of negligence and a claim of malpractice against Dr. Castaneda

13

where he sought monetary damages of $1,000,000 against Dr. Castaneda. The May 15, 2020 negligence petition was filed after the December 26, 2019 petition which the dissent refers to as the petition that "had no claim for malpractice." Thus, if the dissent is contending that Rodina's May 15, 2020 negligence petition had no claim for malpractice, that contention is incorrect.

So, are we to conclude from the dissent that the Wyandotte County District Court and that this court did not have subject matter jurisdiction over Dr. Castaneda and Rodina's negligence and malpractice action that was filed against him on May 15, 2020? Surely not because the Wyandotte County District Court had authority to grant malpractice damages.

III. *Did the district court violate Dr. Castaneda's rights under section 5 of the Kansas Constitution Bill of Rights by removing the question of damages from the jury?*

Dr. Castaneda argues that the district court violated his constitutional rights under section 5 of the Kansas Constitution Bill of Rights by removing the issue of damages from the jury's consideration.

Rodina argues that Dr. Castaneda cannot raise this issue on appeal because he stipulated to the amount of damages in the pretrial order and in the jury instructions. Rodina does not respond to the substance of Dr. Castaneda's complaint.

Dr. Castaneda argues that this issue was raised below and that this court may consider a constitutional issue for the first time on appeal, citing the three exceptions to the rule that new issues cannot be raised on appeal.

Dr. Castaneda raised a constitutional challenge below but not exactly the one he raises now. In his answer, he raised a general due-process objection rather than a specific

14

jury-right objection. For example, Dr. Castaneda raised the issue in the following way: "The Court of Appeals' decision, as applied to Defendant, denies him Due Process of law under the U.S. Constitution and/or Kansas Constitution." Our Supreme Court has explained that "Kansas' section 5 right to jury trial is distinct in every conceivable dimension from the section 18 due process-based right to remedy." *Hilburn v. Enerpipe Ltd.*, 309 Kan. 1127, 1144, 442 P.3d 509 (2019).

Dr. Castaneda did not ask for a jury trial in his answer. He did not mention his right to a jury trial in his response to Rodina's motion to strike his defenses.

At the motion hearing, Dr. Castaneda elaborated but still did not mention section 5:  "[T]he Court of Appeals . . . married my client to a damage award in a lawsuit where he was not a defendant and had no opportunity to defend which I believe denies him due process under either the Kansas constitution or the United States constitution. The Seventh Amendment, Fourteenth Amendment." The Seventh Amendment to the United States Constitution is the right to a jury trial in federal courts. The Seventh Amendment does not apply to the states through the Fourteenth Amendment. *Vanier v. Ponsoldt*, 251 Kan. 88, 102, 833 P.2d 949 (1992).

The district court ruled it was bound by the mandate to have a trial only on the issue of comparative fault but that Dr. Castaneda had preserved his objection for appellate review.

In the pretrial order, Dr. Castaneda did stipulate to the damage amount but with a caveat:  "Defendant denies that *Rodina v. Castaneda*, 60 Kan. App. 2d 384, 494 P.3d 172 (2021) was correctly decided, however, for purposes of this trial, would admit that the damages for dental malpractice have been established at $285,000 by the Court of Appeals as a matter of law." The parties stipulated that the "only issue for the jury to determine is whether the Defendant was negligent and at fault for causing plaintiff's

15

damages, and if so, whether the fault of Plaintiff or anyone else Defendant claims to be at fault must also have his or her fault compared."

In his motion for a new trial, Dr. Castaneda finally made the argument he now makes on appeal—that the district court violated his constitutional right to a jury trial under section 5 of the Kansas Constitution Bill of Rights.

Nevertheless, a party's jury trial right may be waived. Under K.S.A. 2023 Supp. 60-238, in a civil trial, "[a] party waives a jury trial unless its demand is properly served and filed, but the court may set aside a waiver of a jury trial in the interest of justice or when the waiver inadvertently results." K.S.A. 2023 Supp. 60-238(d).

Also, this court has stated: "Even when a jury has been requested in a civil action, a party may waive the request based on conduct that is inconsistent with an intention to insist on a jury trial." *Harder v. Foster*, 58 Kan. App. 2d 201, Syl. ¶ 7, 464 P.3d 382 (2020).

Some case examples are helpful. In *Westamerica Securities, Inc. v. Cornelius*, 214 Kan. 301, 520 P.2d 1262 (1974), the defendants made a timely demand for jury trial which was denied by the trial court. The parties then proceeded to stipulate to the facts and agreed that the case be submitted to the court on the stipulations without the defendants reasserting their request for a jury trial. 214 Kan. at 305-06. Our Supreme Court cited the rule that "[c]onduct or acquiescence inconsistent with an intention to insist on a jury trial may constitute waiver thereof." 214 Kan. at 306. Under the circumstances, the trial court did not err in failing to hold a jury trial. 214 Kan. at 306.

In *Dickinson, Inc. v. Balcor Income Properties Ltd.*, 12 Kan. App. 2d 395, 401, 745 P.2d 1120 (1987), Dickinson claimed that the trial court erred in not granting a jury trial on the issue of attorney fees. Nevertheless, Dickinson allowed the evidentiary

16

hearing to the court to proceed without objection. Dickinson did not make a demand for a jury trial until its motion for a new trial. This court held Dickinson could not complain of error which it had invited or in which it had participated. 12 Kan. App. 2d at 401.

Dr. Castaneda has likely waived this issue by not asserting his right to a jury trial on damages until his motion for a new trial. Even if he somewhat asserted his right to a jury trial by mentioning the Seventh Amendment to the United States Constitution, he did not reassert his right to a jury trial on damages in the agreed pretrial order. He merely stated he believed the previous decision of this court was wrongly decided.

On the other hand, Rodina fails to cite any authority that says Dr. Castaneda could have waived his right to a jury trial due to a separate lawsuit which he was not a party to, had no notice of, and had no opportunity to attend. Rather, a corollary rule to the one-action rule is "that a person who is not made a party to a comparative negligence case is not bound by the judgment." *Mathis v. TG & Y*, 242 Kan. 789, 791, 751 P.2d 136 (1988) (citing *Eurich v. Alkire*, 224 Kan. 236, 579 P.2d 1207 [1978]).

If Dr. Castaneda did not waive his right to a jury trial, the majority may reach this issue under the exception that consideration of the theory is necessary to serve the ends of justice or to prevent denial of fundamental rights because the right to a jury trial is a fundamental right under section 5 of the Kansas Constitution Bill of Rights. See *State v. Arnett*, 314 Kan. 183, 185, 496 P.3d 928 (2021).

"Under the law of the case doctrine, when a second appeal is brought in the same case, the first decision is the settled law of the case on all questions involved in the first appeal, and reconsideration will not normally be given to such questions." *State v. Kleypas*, 305 Kan. 224, Syl. ¶ 2, 382 P.3d 373 (2016). The doctrine promotes judicial efficiency and avoids relitigation of issues. But it is neither an inexorable command nor a constitutional requirement. 305 Kan. at 244-45.

17

Unlike the law of the case doctrine, the mandate rule is a statutory imperative that requires lower courts to follow the mandates issued by appellate courts. *State v. Cheeks*, 313 Kan. 60, 67, 482 P.3d 1129 (2021). While different panels of the Court of Appeals hearing successive appeals in the same case may, in exceptional circumstances, depart from the law of the case, no exceptional circumstances permit a lower court to circumvent the mandate of a higher court. *Building Erection Svcs. Co. v. Walton Construction Co.*, 312 Kan. 432, 441, 475 P.3d 1231 (2020).

The mandate rule prevents district court action on remand when an issue has already been finally settled by earlier proceedings in a case, including issuance of the appellate mandate.

> "If a final settlement of an issue has occurred, the district judge is not free to expand upon or revise that history. The mandate rule does not, however, prevent a district judge from doing whatever else is necessary to dispose of a case. This means the district judge must not only do as the mandate directs; he or she must also do what is needed to settle other outstanding issues that must be decided to complete district court work on the case." *State v. Soto*, 310 Kan. 242, 256, 445 P.3d 1161 (2019).

The mandate rule does not constitute an inflexible barrier to a party's ability to raise a new issue following a remand where a remand order is not stated in specific terms following deliberate litigation choices by the parties. *State v. Smith*, 312 Kan. 876, 886, 482 P.3d 586 (2021). The lower court may decide issues "'untouched by appellate proceedings.'" *State v. McMillan*, 319 Kan. 239, 257, 553 P.3d 296 (2024).

The issue of whether Dr. Castaneda had a right to have a jury determine the damages against him was not an issue before the panel in the previous appeal. The issue in the previous appeal was whether the one-action ruled barred the suit against Dr. Castaneda. The district court had granted Dr. Castaneda's motion to dismiss on that basis. See *Rodina*, 60 Kan. App. 2d at 385. When the case went back to the district court, Dr.

Castaneda had not even filed his answer to Rodina's petition. Indeed, there was a lot outstanding before the case could be resolved.

*A civil defendant has a right to a jury trial on damages.*

Section 5 of the Kansas Constitution Bill of Rights states: "The right of trial by jury shall be inviolate." The right to a jury trial is "'a substantial and valuable right and should never be lightly denied. The law favors trial by jury, and the right should be carefully guarded against infringements.'" *Hilburn*, 309 Kan. at 1132-33. Section 5 preserves the jury trial right as it existed at common law when the Kansas Constitution came into existence. 309 Kan. at 1133. In assessing a challenge under section 5, the court first determines whether section 5's jury trial right is implicated as that right has historically been understood. Then, the court determines whether the right has been impaired by interfering with the jury's fundamental function. 309 Kan. at 1134; *Ashley Clinic, LLC v. Coates*, 64 Kan. App. 2d 53, 74, 545 P.3d 1020 (2024).

Section 5 was implicated by the district court's ruling removing the issue of damages from the jury's consideration. Common-law tort actions, including medical malpractice claims, were historically triable to a jury. *Miller v. Johnson*, 295 Kan. 636, 647, 289 P.3d 1098 (2012), *abrogated on other grounds by Hilburn*, 309 Kan. at 1128. The determination of damages was a "fundamental part of a jury trial at common law and protected by section 5." 309 Kan. at 1134. And civil defendants had a right to demand a jury trial in common-law tort actions. *Arnett*, 314 Kan. at 189.

Here, when the district court determined the amount of damages, rather than a jury, it violated the traditional function of the jury to determine civil damages. See *Arnett*, 314 Kan. at 194. The judgment violated the right protected by section 5 by intruding on the jury's determination of the amount of the award. The right to a jury trial cannot

"remain inviolate" when a party is deprived of the jury's constitutionally assigned role of determining damages according to the facts of the case. See *Hilburn*, 309 Kan. at 1135.

In sum, Dr. Castaneda did not waive his right to a jury trial by not asserting his right to a jury trial on damages until his motion for a new trial. So, the majority concludes that Dr. Castaneda has a Kansas constitutional right to a jury trial on the total amount of damages involved in this malpractice action.

IV. *Did the district court err by refusing to allow the jury to consider the comparative fault of Dr. Steven Jones?*

Dr. Castaneda argues that the district court erred by granting Rodina's motion for judgment as a matter of law on the issue of Dr. Jones' fault.

Dr. Castaneda treated Rodina from about June to October 2018. Dr. Jones treated Rodina for three years before that.

When the negligent actions of more than one health care provider combine to cause injury, the liability of the various healthcare providers must be allocated based on their comparable fault. *Puckett v. Mt. Carmel Regional Med. Center*, 290 Kan. 406, 425, 228 P.3d 1048 (2010).

The parties' legal theories were set out in a pretrial order. Rodina claimed that Dr. Castaneda was negligent as follows:

- failing to have a proper treatment plan;
- relying on clerical staff to prepare a treatment plan;
- inserting three implants in Rodina's upper jaw, which was not suitable for implants;

- inserting those three implants at the wrong angle;
- inserting those three implants at the wrong depth;
- failing to remove all of the periodontal disease from Rodina's mouth before doing any implants;
- inserting implants in the upper jaw that did not have sufficient bone to support them;
- failing to do bone grafting before inserting implants; and
- failing to refer Rodina to a specialist.

Rodina claimed that all the work done by Dr. Castaneda had to be removed. Rodina had to be referred to an oral surgeon for bone grafting and proper implants.

Dr. Castaneda claimed that Dr. Jones was negligent and at fault as follows:

- using mini implants in Rodina's lower arch;
- failing to implement a proper treatment plan; and
- relying on clerical staff to be involved with Rodina's treatment plan.

In the default judgment, Rodina was awarded damages for having all the dental work performed at Dr. Taylor's office (after Dr. Taylor retired) redone.

At trial, Dr. Castaneda testified that when he first saw Rodina, Rodina was having problems with his lower partial denture and that Rodina's mini implants were failing. Dr. Jones had installed the three mini implants in Rodina's lower jaw. Dr. Castaneda had the following exchanges with opposing counsel concerning Dr. Jones' fault:

"Q.  Now, one thing that your claiming in this case . . . is that Dr. Jones was at fault for causing damage to Mr. Rodina; is that right?
"A.  Well, the mini implants were failing and they were not removed.

21

. . . .

"Q. Sure. Are you telling the jury that the issues that Mr. Rodina had in 2018 and into 2019 . . . [were] due to Dr. Jones who treated him prior to you . . . [?]

"A. Well, his implants were failing, so that would be a causative factor."

Dr. Castaneda testified that it is not negligent to use mini implants but that Rodina's mini implants were placed at "the wrong angle." He had the following exchanges with opposing counsel:

"Q. The fact that the mini implants were failing is not negligence in and of itself. Would you agree with that?

"A. Right. But the fact that they were not functional because of their angulation and he was having problems in maintaining the partial to be functional for him, that would be the factor involved in that.

. . . .

"Q. Is it your position, then, to the jury that just the fact that you use mini implants, that that's negligence?

"A. I would say not. I would say when they're at very opposing angles, that makes it very difficult to insert a lower partial.

"Q. Okay.

"A. If those implants would have been straight up and down, then that would have been more functional for him and that would have given greater support to that lower partial.

"And, additionally, there would have been less torque to put on those implants because of the angulation at which they were placed at.

. . . .

"Q. So going back to what we were talking about, since you claim Dr. Jones was negligent for using these mini implants and how he inserted them, the standard of care would be for you to not continue using them, knowing they were failing.

"A. Right."

Dr. Castaneda testified that the mini implants could not be salvaged because "they were at a wrong angulation and so there's no way that they really could have continued supporting the denture like it needed to be. And there's significant bone loss in there."

Dr. Castaneda admitted that he could not know if Rodina's presentation was different when Dr. Jones saw Rodina because he was not there. Dr. Castaneda testified that he looked at x-rays of Rodina's mouth going back to 2015 when he began treating Rodina.

Dr. Castaneda testified that mini implants were FDA approved but had a higher failure rate than traditional implants—up to 25 percent. Mini implants were "not very predictable" and "[n]ot the best option." Mini implants typically do not last longer than 10 years. He testified that Rodina's mini implants "had been working for three years, so I guess they were working to a degree, but they weren't working to the best degree." He further testified that he planned to remove the mini implants, but Rodina refused that part of his treatment plan.

Ultimately, the mini implants were removed by Dr. Brent Newby and replaced by six full-sized implants for a permanent bridge. Dr. Newby testified that mini implants are "kind of used as temporary implants." He testified that if an implant is placed at the wrong angle, the standard of care is to redo the implant.

At the close of evidence, Rodina moved for a directed verdict on Dr. Castaneda's claims of comparative fault of Dr. Jones and others. He argued that Dr. Castaneda did not testify that Dr. Jones did anything that was below the standard of care. While there was testimony that the use of mini implants is not ideal and they ultimately fail after a time, they are approved for use.

The district court granted the motion. The court ruled that there was no evidence that the use of mini implants was contrary to the standard of care or that the mini implants were placed inappropriately. The testimony was just that they had failed as mini implants do sooner or later.

A trial court's ruling on a motion for judgment as a matter of law is reviewed de novo determining "whether evidence existed from which a reasonable jury 'could properly find a verdict for the nonmoving party.'" *Siruta v. Siruta*, 301 Kan. 757, 766, 348 P.3d 549 (2015).

When ruling on a motion for judgment as a matter of law, the district court must resolve all facts and inferences that may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. The district court must deny the motion if reasonable minds could reach different conclusions based on the evidence. The appellate court must apply a similar analysis when reviewing the grant or denial of a motion for judgment as a matter of law. *Dawson v. BNSF Railway Co.*, 309 Kan. 446, 454, 437 P.3d 929 (2019).

Dr. Castaneda contends that the district court erred in its ruling that there was "no evidence that the mini implants were placed inappropriately, just that they had failed." At trial, Dr. Castaneda attributed the issues with Rodina's lower partial denture to the improper angulation of the mini implants.

Rodina points out that Dr. Castaneda testified that use of mini implants and their failure is not evidence of a breach of the standard of care and that Dr. Castaneda did not remove the mini implants despite knowing they were failing. Rodina argues that Dr. Castaneda cannot establish negligence by Dr. Jones without evidence of Rodina's condition at the time he was treated by Dr. Jones.

24

The following must be shown to establish medical malpractice: (1) the healthcare provider owed the patient a duty of care; (2) the provider breached that duty or deviated from the standard of care; (3) the patient was injured; and (4) the injury was proximately caused by the healthcare provider's breach of the standard of care. *Castleberry v. DeBrot*, 308 Kan. 791, 802, 424 P.3d 495 (2018). The rules of law governing the duty and liability of dentists correspond to the rules of law applicable to physicians and surgeons generally. *Simpson v. Davis*, 219 Kan. 584, 587, 549 P.2d 950 (1976).

In medical malpractice cases, expert testimony is required to establish the standard of care and show a deviation from the standard of care if the subject matter falls outside the common knowledge or experience of the average layperson. *Biglow v. Eidenberg*, 308 Kan. 873, 887-88, 893-94, 424 P.3d 515 (2018). The opinions rendered by expert witnesses "should be limited to matters which are within a reasonable degree of probability and should not include mere possibilities." *Acord v. Porter*, 58 Kan. App. 2d 747, 761, 475 P.3d 665 (2020). "No particular words of art are necessary; it is sufficient if the expert's words can be interpreted to show reasonable probability." *Tamplin v. Star Lumber & Supply Co.*, 251 Kan. 300, 305, 836 P.2d 1102 (1992) (citing *Nunez v. Wilson,* 211 Kan. 443, Syl. ¶ 1, 507 P.2d 329 [1973]). Courts look at whether the medical expert's opinion testimony, taken as a whole, reflects an honest expression of professional opinion concerning reasonable medical probability. *Tamplin*, 251 Kan. at 305-06.

In *Drouhard-Nordhus v. Rosenquist*, No. 108,859, 2013 WL 5737363, at *6-8 (Kan. App. 2013) (unpublished opinion), a panel of this court reversed a grant of summary judgment in favor of a defendant because—viewed in the light most favorable to the plaintiff—the expert's testimony that the defendant's care was "'suboptimal,'" "'substandard,'" and "'unacceptable'" was sufficient to show that the defendant breached the applicable standard of care though the expert did not say "'below acceptable standard of care.'"

Testimony from an expert concerning their preferred treatment does not establish the standard of care in a medical malpractice action. *Schlaikjer v. Kaplan*, 296 Kan. 456, 469-70, 293 P.3d 155 (2013) (*citing Karrigan v. Nazareth Convent & Academy, Inc.*, 212 Kan. 44, 50, 510 P.2d 190 [1973]). In *Karrigan*, our Supreme Court affirmed entry of a directed verdict because the plaintiff had not introduced expert testimony to establish the applicable standard of care or breach of it for postoperative care. The plaintiff's witness testified only that it was his practice to check postoperative patients more frequently than the defendant had. He refused to say waiting longer was not good medical practice. Such evidence was insufficient to establish the standard of care. 212 Kan. at 50-51.

Here, the expert testimony viewed in a light most favorable to Dr. Castaneda was adequate to establish that Dr. Jones' placement of the mini implants at an improper angle (and failure to replace them) fell below the standard of care and caused a portion of the damages awarded in the default judgment. There was expert testimony that if an implant is placed at the wrong angle, the standard of care is to redo the implant.

Dr. Castaneda was asked questions by opposing counsel that were couched in terms of "negligence" and "standard of care." He answered the questions by stating the mini implants "were not functional because of their angulation," "they were at a wrong angulation," "the wrong angle." In context, the statements indicate Dr. Jones' placement of the implants fell below the standard of care, though Dr. Castaneda himself did not use that phrase.

As a result, the majority reverses the district court's directed verdict on this issue of whether Dr. Jones was at fault for his use of the mini implants. This court has previously remanded this case for a trial to determine comparative fault. That did not happen because the only dentist the jury was permitted to assign fault to was Dr. Castaneda. Thus, the majority remands this case again because the district court erred in

26

granting a directed verdict on the fault of Dr. Jones because Dr. Jones was not included in the comparative fault determination along with Dr. Castaneda.

CROSS-APPEAL

*Did the district court err in refusing to award prejudgment interest?*

In the default judgment, the district court awarded Rodina economic and noneconomic damages in the amount of $285,000. In this case, the district court ruled that per the Court of Appeals mandate the damage amount set in the default judgment was binding. The damages had already been determined and could not be increased or decreased by either party. The parties stipulated that amount was $285,000.

After trial in this case, Rodina sought prejudgment interest under K.S.A. 16-201. He claimed that he was due prejudgment interest from the date the default judgment was entered in Wyandotte County District Court in *Rodina v. Taylor*, 2019-CV-000983 for $285,000 on May 18, 2020. The district court, however, denied the claim for prejudgment interest ruling that "[a]lthough the damages have been established and binding on Dr. Castaneda, his responsibility for some or all of the damages was not established until trial of the above captioned and numbered case."

Rodina argues that the amount of damages were liquidated when the default judgment was entered on May 18, 2020. A dispute concerning liability does not make the damages unliquidated.

Dr. Castaneda argues that Rodina's damages were not liquidated until it was determined that Dr. Castaneda was at fault. He argues that the cases cited by Rodina are distinguishable because they did not involve claims for comparative fault.

27

K.S.A. 16-201 generally applies to all prejudgment interest claims on general unpaid sums. *Fawcett Trust v. Oil Producers Inc. of Kansas*, 315 Kan. 259, 285, 507 P.3d 1124 (2022). The statute reads: "[C]reditors shall be allowed to receive interest at the rate of ten percent per annum, when no other rate of interest is agreed upon, for any money after it becomes due." K.S.A. 16-201(a). In other words, prejudgment interest is allowable on liquidated claims. "A claim becomes liquidated when both the amount due and the date on which such amount is due are fixed and certain or when the same become definitely ascertainable by mathematical calculation." *Owen Lumber Co. v. Chartrand*, 283 Kan. 911, 925, 157 P.3d 1109 (2007). A good-faith controversy concerning whether a party is liable for a liquidated claim does not preclude a grant of prejudgment interest. *Owen Lumber Co.*, 283 Kan. at 926-27.

A decision whether to award prejudgment interest under K.S.A. 16-201 is a matter of judicial discretion and can be reversed only upon a showing of an abuse of that discretion. *Owen Lumber Co.*, 283 Kan. at 925. But this court has held that "[i]f a claim is liquidated, prejudgment interest must be awarded." *Federal Land Bank of Wichita v. Vann*, 20 Kan. App. 2d 635, Syl. ¶ 4, 890 P.2d 1242 (1995).

Dr. Castaneda's argument is persuasive. In most tort cases, prejudgment interest is not appropriate under K.S.A. 16-201 because the amount of damages due to the plaintiff is not fixed and certain until the jury resolves that question of fact and the court enters judgment. *Safety Technologies, L.C. v. Biotronix 2000, Inc.*, 136 F. Supp. 2d 1169, 1175-76 (D. Kan. 2001).

As stated previously, a claim becomes liquidated when both the amount due and the date on which such amount is due are fixed and certain or when the same become definitely ascertainable by mathematical calculation. Here, there was a question of fact whether Dr. Castaneda was liable to Rodina for $285,000 until the jury made its 100%

28

fault verdict against him on November 16, 2022, and the district court entered its judgment against him for $285,000 on December 15, 2022.

As Dr. Castaneda stated in his memorandum in opposition to plaintiff's motion for entry of judgment, the amount of damages recoverable against him, based on his percentage of fault, ranged from 0% to 100%. For this reason, the amount of damages was disputed because of the verdict form requiring the jury to consider and determine the following question of fact:

"Considering all of the fault at one hundred percent, what percentage of the fault is attributable to each of the following parties?
"Curtis Rodina                              (0% to 100%)_____%
"Alberto R. Castaneda DDS           (0% to 100%)_____%"

Here, the jury instructions allowed the jury to assign fault to Rodina or Castaneda or to both Rodina or Castaneda. Thus, based on this jury verdict form, the amount of damages due to Rodina was in dispute until the jury resolved that question of fact when it entered its 100% fault verdict against Dr. Castaneda on November 16, 2022. So, under this fact situation, the amount due to Rodina was not fixed and certain until the jury made its 100% fault determination against Dr. Castaneda and the district court entered its judgment against him for $285,000 on December 15, 2022. For this reason, Rodina was not entitled to prejudgment interest under K.S.A. 16-201 because the amount due to him was not fixed and certain.

Affirmed in part, reversed in part, and remanded for a new trial on the issue of damages and liability.

* * *

HILL, J., dissenting: Courts must never perpetuate error. This is why Kansas courts have always held that jurisdiction can be questioned at any time. The United States Supreme Court has repeatedly held that the existence of unaddressed jurisdictional defects has no precedential effect. That is, a ruling on the merits of a case in which the court's jurisdiction wasn't challenged or assumed doesn't constitute precedent on whether the court has jurisdiction on such a case. See *Lewis v. Casey*, 518 U.S. 343, 352 n.2, 116 S. Ct. 2174, 135 L. Ed. 2d 606 (1996). I think my friends in the majority have erred by preserving a district court error when they hold that any new trial held on remand in this appeal will be limited to comparative fault and not a determination of damages.

While I agree with the majority that this case must be reversed and a new jury trial granted, I must dissent from the majority's holding that damages in this lawsuit are limited to $285,000. That amount was granted by a district court in a different lawsuit with different parties. In that lawsuit, the court had no authority to grant those damages. I would remand the case to the district court for a new trial to determine damages as well as comparative fault. By doing so, damages would be determined for the first time in one action. I also agree with the majority's correct opinion on the cross-appeal.

*Rodina's first lawsuit against others had no legal effect on Dr. Castaneda in this lawsuit.*

My main point is this: Subject matter jurisdiction may be raised at any time, whether for the first time on appeal or even on the appellate court's own motion. *Baker v. Hayden*, 313 Kan. 667, 673, 490 P.3d 1164 (2021). Rodina's first lawsuit pursued parties other than Dr. Castaneda. This means the Doctor had no notice and no opportunity to defend himself in response to any of the claims made in that action. The claims made in that lawsuit are not negligence claims. The only practical result that came from that action was that Rodina identified Dr. Castaneda as the dentist who installed the allegedly faulty implants.

30

The default judgment in Rodina's first lawsuit arises from a claim for a HIPAA violation, a Consumer Protection Act claim, and a breach of contract claim. The district court had no jurisdiction to award economic and noneconomic damages as if it were a negligence claim. It was not a negligence claim. There is simply a lack of subject matter jurisdiction in that prior lawsuit. A court cannot create its own authority. Subject matter jurisdiction is vested by statute and establishes the court's authority to hear and decide a particular type of action. *Pieren-Abbott v. Kansas Dept. of Revenue*, 279 Kan. 83, 92, 106 P.3d 492 (2005).

Also, what a court cannot do, the parties cannot do when it comes to jurisdiction. Parties cannot confer subject matter jurisdiction by consent, waiver, or estoppel, and parties cannot convey subject matter jurisdiction on a court by failing to object to the court's lack of jurisdiction. *Kansas Bd. of Regents v. Skinner*, 267 Kan. 808, Syl. ¶ 5, 987 P.2d 1096 (1999).

While the majority—using an elaborate syllogism—speaks of the failure of Dr. Castaneda to properly argue this point, I rely on the law. That first court had no authority to grant malpractice damages, and the parties cannot, through inapt arguments somehow give the court such authority to the extent that its judgment is now binding in a different lawsuit. Why should we enforce a judgment from a court that lacked jurisdiction to make that judgment? The time has come to declare it a legal nullity and bury it as such.

The cases on this point are clear. "To properly act in any case, a court must be vested with both jurisdiction of the subject matter and the parties." *State v. Bickford*, 234 Kan. 507, 508-09, 672 P.2d 607 (1983). Subject matter jurisdiction is vested by statute and establishes the court's authority to hear and decide a particular type of case. *Kingsley v. Kansas Dept. of Revenue*, 288 Kan. 390, 395, 204 P.3d 562 (2009). "Proceedings conducted or decisions made by a court are legally void when there is an absence of

31

subject matter jurisdiction. *Bickford*, 234 Kan. at 509." *Bradley v. Bear*, 46 Kan. App. 2d 1008, 1012, 272 P.3d 611 (2012).

Certain legal points must not be blurred. "'Which party should win a lawsuit is an altogether different question from that of whether the court has the power to say who wins.'" *Frazier v. Goudschaal*, 296 Kan. 730, 743, 295 P.3d 542 (2013). Subject matter jurisdiction refers to the power of a court to hear and decide a particular type of action. *Wichita Eagle & Beacon Publishing v. Simmons*, 274 Kan. 194, 205, 50 P.3d 66 (2002). "Jurisdiction over subject matter is the power to decide the general question involved and not the exercise of that power. *Babcock v. City of Kansas City*, 197 Kan. 610, 618, 419 P.2d 882 (1966)." *Jahnke v. Blue Cross & Blue Shield of Kansas, Inc.*, 51 Kan. App. 2d 678, 686-88, 353 P.3d 455 (2015).

*The legal enforceability of the initial default judgment in a prior lawsuit against any nonparty is questionable.*

In light of this authority, I question the district court's jurisdiction in Rodina's first lawsuit to award negligence damages in an action that does not sound in negligence. The logic of this view is simple. Because the court that awarded the default judgment had no jurisdiction to grant these damages, the district court's initial ruling in this case applying the one-action rule is erroneous. This lack of jurisdiction error was never addressed by the district court when it initially dismissed this lawsuit. Nor did our panel examine this error when it took up the appeal of this lawsuit's dismissal. It was assumed that the judgment was proper. We know from *Lewis* that that prior lawsuit cannot serve as precedent that the court had jurisdiction to grant such a judgment.

32

*Are the prior panel's remarks about damages in the first appeal of this case dicta?*

I think they are dicta. An application of logic demonstrates that the comments of the prior panel concerning damages are dicta and cannot serve as horizontal precedent. The panel was clear in the logic of its holding:

> *Major premise*: By law, negligence actions in Kansas require a determination of the comparative fault of all who contribute to the cause of injury.
>
> *Minor premise*: There was no determination of comparative fault in the prior default action.
>
> *Conclusion***:** Therefore, with no determination of comparative fault this action did not comply with Kansas law.

This means the mandate arising from the first appeal is simple and clear. The *mandate* of the panel in this case: Reversed and remanded.

Now that the holding of the panel is manifest, the determination of whether the panel's remarks on negligence damages are dicta is straightforward. One way to determine whether remarks in a judicial opinion are dicta is to assess whether those remarks are essential to the holding in the case. If the remarks are omitted and the holding is unaffected by their omission, the remarks are dicta. If the omission of the remarks modify the holding, they are not dicta.

If we omit the panel's remarks about damages from the panel's opinion, we see that the panel's holding is unaffected. There must be a determination of comparative fault in negligence actions in Kansas, and this action did not comply with that law. Thus, these inessential remarks about damages are dicta and are not a part of the mandate. Another way to look at this question is the view that an opinion that is not essential to the decision

constitutes judicial dictum. See *Jamerson v. Heimgartner*, 304 Kan. 678, 686, 372 P.3d 1236 (2016). This opinion was not essential and thus constitutes judicial dicta.

This concept of remarks not being essential is important because as an older Supreme Court case stated, "nobody is bound by dictum, 'not even . . . the court itself when it may be further enlightened by briefs and arguments of counsel and mature consideration and when it becomes a question squarely presented for decision.'" *Medford v. Board of Trustees of Park College*, 162 Kan. 169, 173, 175 P.2d 95 (1946). See *Law v. Law Co. Bldg. Assocs.*, 295 Kan. 551, 564, 289 P.3d 1066 (2012).

In my view, the parties in this lawsuit are not bound by the panel's remarks about negligence damages as they are dicta. Those nonessential remarks cannot serve as a horizontal precedent.

There was also a suggestion that the mandate rule applied here. I think not. The mandate rule "applies to prevent district court action on remand only when an issue has already been finally settled by earlier proceedings in a case, including issuance of the appellate mandate." *State v. Soto*, 310 Kan. 242, 256, 445 P.3d 1161 (2019). The *Soto* court discussed the application of the mandate rule:

> "If a final settlement of an issue has occurred, the district judge is not free to expand upon or revise that history. The mandate rule does not, however, prevent a district judge from doing whatever else is necessary to dispose of a case. This means the district judge must not only do as the mandate directs; he or she must also do what is needed to settle other outstanding issues that must be decided to complete district court work on the case. Such issues may have been allocated for decision in the district court in the first place and then untouched by appellate proceedings. See *State v. Morton*, 283 Kan. 464, 471-74, 153 P.3d 532 (2007) (district court presiding over retrial pursuant to appellate mandate permitted to reconsider motion in limine ruling never contested in appeal). They may include issues arising from late-breaking facts. See *Duffitt & Ramsey v. Crozier, Judge*, 30 Kan. 150,

152-53, 1 P. 69 (1883) (differentiating issues within mandate, those without; 'matters arising subsequent to' appellate decision may be considered on remand; discretion to do something for the parties not covered by the mandate can be exercised 'only upon the presentation of new facts')." *Soto*, 310 Kan. at 256.

Then, the court discussed the role of a reviewing court in an appeal from the court's remand: "Once a district judge has acted on remand, we judge whether he or she has complied with Kansas' more subtle version of the mandate rule de novo on appeal." *Soto*, 310 Kan. at 256. Because the remarks of the prior panel about negligence damages are dicta, the mandate rule is inapplicable. There has been no final determination of damages, and the court's remarks are not part of the mandate.

*Did Dr. Castaneda invite this error?*

Before this appeal, Dr. Castaneda never argued that part of the first panel's opinion could be disregarded as dicta. Nor did he argue that the district court was misinterpreting the mandate. Instead, he took a contrary position, arguing that the Court of Appeals opinion "married" him to the default judgment damage award. In fact, he stipulated in the pretrial order here that the only issue for the jury was comparative fault, even though he stated he believed the prior appeal was wrongly decided.

Does this mean, then, that by making these arguments, Dr. Castaneda cannot now make his argument about negligence damages? In considering this question, there are two principles that come into play here. First, a party cannot invite error and then later complain of that error on appeal. *Water Dist. No. 1 of Johnson Co. v. Prairie Ctr. Dev.*, 304 Kan. 603, 618, 375 P.3d 304 (2016). Second, issues not raised before the district court cannot be raised on appeal. *In re Adoption of Baby Girl G.*, 311 Kan. 798, 801, 466 P.3d 1207 (2020).

Dr. Castaneda's argument claiming the Court of Appeals forced him to embrace the default judgment's award of damages could be viewed as a waiver of any argument to the contrary. But that argument fails when dealing with jurisdiction, because parties cannot confer subject matter jurisdiction by consent, waiver, or estoppel. A failure to object to the court's jurisdiction does not invest the court with the requisite subject matter jurisdiction. See *Chambers v. Burrough*, 314 Kan. 1, 7, 494 P.3d 128 (2021). I see no waiver here.

If we were dealing with ordinary errors of law and not a subject so fundamental as jurisdiction, it would be tempting to deny Dr. Castaneda any relief and hold that he invited the error. But such a holding implies that only the parties can raise the jurisdiction issue, and that is incorrect under the holding in *Baker*, 313 Kan. at 673. An appellate court can raise a jurisdiction issue on its own motion.

Once a lack of jurisdiction is unearthed, that fact cannot be reburied by the parties' argument or lack of argument. We are an error-correcting court and this lack of jurisdiction of the district court granting a default judgment is an error that we must try to correct. Simply put, consideration of this problem is necessary to serve the ends of justice as well as to prevent a denial of fundamental rights. See *In re Estate of Broderick*, 286 Kan. 1071, 1082, 191 P.3d 284 (2008). We must not perpetuate error.

I would hold that the jury should decide the amount of malpractice damages in this case, not some judge in a default proceeding where the petition had no claim for malpractice. The majority argues that the district court *in this action* had jurisdiction to decide these damages and in turn the first panel had jurisdiction to determine these damages if any. I do not dispute that. I just wish the two courts had done so and not assume the prior ruling by a court without jurisdiction was controlling. Adopting that ruling is error. By holding a proper trial on both questions—fault and damages—the one-action rule is satisfied and the prior error does not survive.

36